**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | | |
|---|---|---|---|
| ALFONZO GABRIEL ARIAS, BETUEL CASTRO CAMACHO, WILLIAN ALBERTO GIMENEZ GONZALEZ, LUIS ADRIAN GOMEZ, JUAN CARLOS MONTANO, and LATINO UNION, INC., | ) ) ) ) ) ) | | |
| Plaintiffs, | ) ) | No. | 24-cv-6859 |
| v. | ) ) | Judge: Joan H. Lefkow | |
| CITY OF CHICAGO, HOME DEPOT U.S.A., INC., ANGEL MARTINEZ, ALVAREZ (FIRST NAME UNKNOWN), SHAWN GAYTAN, TIM **PATER,**ALEJANDRO ROJAS, DONNIE REID, MATTHEW DOMINIAK, VALERIA SORIA, CHICAGO POLICE OFFICER JOHN DOES, and HOME DEPOT JOHN DOES, | ) ) ) ) ) ) ) ) ) ) | | |
| Defendants. | ) | JURY DEMAND | |

## COMPLAINT

1.    Day labor is an inherently tenuous occupation that is exploited by employers and businesses while also being targeted as unsightly and undesirable by public officials and police. Individual Plaintiffs Alfonzo Arias, Betuel Camacho, Willian Gimenez, Luis Gomez, and Juan Carlos Montano represent a population of recent arrivals who support themselves through this precarious work. These day laborers — *jornaleros* in Spanish — "seek temporary employment on public street corners in the home construction and landscaping industries."[1] The Individual Plaintiffs travel to areas near hardware stores, often waiting for hours in brutal weather with the goal of being hired by construction professionals, homeowners, or others needing immediately available labor. The instant case presents a pattern of discriminatory, unlawful, and brutal abuses

---

[1] *About Us*, LATINO UNION OF CHICAGO, https://www.latinounion.org/about- (last visited July 30, 2024)

agreed to, ordered, and committed by Defendants against a specific demographic of *jornaleros*.

2. Recent arrivals from countries like Venezuela, needing work, have sought employment through day labor. Individual Plaintiffs sought work as *jornaleros* near the premises of Home Depot Store #1986 located at 4555 S. Western Boulevard, Chicago, Illinois 60609 ("Home Depot Store #1986"). In a series of strikingly similar incidents occurring between October 2023 and May 2024, the Individual Plaintiffs experienced egregious civil rights violations while trying to secure work around Home Depot Store #1986.

3. These abuses, while horrifying, are not new. Day laborers have sought work at Home Depot locations across the Chicagoland area, and across the country, for decades.[2] The abuses Plaintiffs allege have been raised by other day laborers at the same Home Depot location.[3]

4. In response to the influx of new arrivals seeking work near its parking lot, Home Depot Store #1986 has turned to off-duty Chicago Police Department ("CPD") officers working secondary employment and acting as additional Home Depot security. In turn, the Individual Plaintiffs have endured physical violence at the hands of off-duty Chicago Police Department officers as they have been targeted based on their race, ethnicity, and national origin and thrown to the ground, aggressively handcuffed, and beaten by officers in displays of excessive force.

5. Individual Defendant CPD officers, employees of Home Depot, and Doe Defendants detained Individual Plaintiffs either near Home Depot Store #1986 property or on its parking lot and took them into a secluded room inside the store where they were beaten and insulted while handcuffed.

---

[2] "The last two decades have seen a dramatic rise in the number of informal day labor sites throughout the continental United States, to the point that they have become a ubiquitous presence in most of the country's urban areas." Juan Thomas Ordonez, *Being a Day Laborer in the USA*, Introduction p. 1 (2015).

[3] Antonio Olivo, *Day laborers sue city over arrests*, CHI. TRIB. (Dec. 6, 2007), https://www.chicagotribune.com/2007/12/06/day-laborers-sue-city-over-arrests/

6.      Individual Plaintiffs have also endured xenophobic and racially motivated insults about their experiences as Venezuelan migrants while detained by off-duty CPD officers. Several Individual Plaintiffs were subsequently charged with criminal trespass by CPD's on-duty officers. Meanwhile, the off-duty Chicago Police Department officers have not abused other day laborers seeking work on or near Home Depot premises who are not perceived to be recent arrivals.

7.      Defendants City of Chicago ("the City"), through the Chicago Police Department, Home Depot, and the Individual Defendants named herein have targeted the Individual Plaintiffs, and dozens of other migrants perceived to be Venezuelan, in a conspiracy to criminalize day laborers' attempts to find work in Chicago. Chicago Police Department officers working secondary employment at Home Depot Store #1986 have engaged in unchecked abuses of police power while mistreating Plaintiffs. The Chicago Police Department and the City of Chicago have facilitated these abuses by failing to supervise their employees and mitigate civil rights violations committed under the color of law and by discriminatorily arresting workers for trespassing violations at Home Depot.

8.      The conduct of Chicago police officers and conspiracy among Defendants is a continuation of Chicago's history of police officers targeting racial minorities. Security personnel hide abuses behind a cloak of legal authority in multiple ways: police working secondary employment remove day laborers from a public parking lot or public spaces and sequester them in a private room where the day laborers are handcuffed and beaten with open- and closed-fists. Day laborers are coerced to sign documents written in English that they do not understand. Day laborers are charged with criminal trespass, conceivably in an effort to shield the City and Individual CPD Defendants from potential liability for their actions.

9.      Plaintiffs file this Complaint against the City of Chicago, individually named and

John Doe CPD officers, and Home Depot and their named and unnamed employees. This lawsuit seeks to enforce the Plaintiffs' rights under the Fourth Amendment of the United States Constitution, pursuant to 42 U.S.C. §§ 1981, 1983, 1985, and 1986, and Illinois state law. Plaintiffs seek declaratory and injunctive relief so that Individual Plaintiffs may seek work pursuant to their needs without threat of arrest and further retaliatory action and so that Plaintiff Latino Union may continue to engage in its mission of organizing and advancing the interests of day laborers in Chicago. Furthermore, Individual Plaintiffs individually seek monetary damages against the Defendants for the harm they incurred as a result of the Defendants' unlawful actions.

## JURISDICTION AND VENUE

10.     Plaintiffs bring this action pursuant to the Civil Rights Act of 1871, §§ 1981, 1983, 1985, and 1986, as well as Illinois law.

11.     This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a) and over the Plaintiffs' state law claims pursuant to the Court's supplemental jurisdiction, as codified in 28 U.S.C. § 1367(a).

12.     Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b) because the parties reside in this district, or, at the time the events took place, resided in this judicial district or because the events giving rise to Plaintiffs' claims occurred in this district.

## PARTIES

13.     Plaintiff ALFONZO GABRIEL ARIAS is a Venezuelan man who was detained and assaulted at Home Depot Store #1986 on December 8, 2023.

14.     Plaintiff LUIS ANTONIO ADRIAN GOMEZ is a Venezuelan man who was detained and assaulted at Home Depot Store #1986 on January 10, 2024.

15.     Plaintiff JUAN CARLOS MONTANO is a Venezuelan man who was detained and

assaulted at Home Depot Store #1986 on December 12, 2023.

16.     Plaintiff BETUEL CASTRO CAMACHO is a Colombian man who was detained and assaulted at Home Depot Store #1986 on May 22, 2024.

17.     Plaintiff WILLIAN ALBERTO GIMENEZ GONZALEZ is a Venezuelan man who was detained and assaulted at Home Depot Store #1986 on October 25, 2023.

18.     At all times relevant, all Plaintiffs named above were present within the United States of America and entitled to the rights, privileges, and immunities guaranteed to all people within the United States under the Constitution and laws of the United States.

19.     Plaintiff LATINO UNION, INC. ("Latino Union") is a not-for-profit corporation dedicated to building power with day laborers, household workers, and other contracted workers to fight for social and economic justice. Founded in 2000, Latino Union operates a Day Laborer Program that has reached hundreds of construction and landscaping industry day laborers with vital information on preventing construction accidents and wage theft, as well as workforce development and education services. Latino Union's initiatives led to the passing of the first Day Labor Ordinance in 2002, subsequently passed in strengthened form as the Day Laborer Protection Act in 2005. LATINO UNION is based in Chicago, Illinois.

20.     Defendant CITY OF CHICAGO is a municipal corporation under the laws of the City of Chicago, located in the Northern District of Illinois. It is authorized under the laws of the State of Illinois to maintain the Chicago Police Department, which acts as the City's agent and policymaker in the area of municipal law enforcement, and for which the City is ultimately responsible. Defendant CITY OF CHICAGO was, at all times material to this Complaint, the employer and principal of the Defendant Officers described below.

21.     Defendant HOME DEPOT U.S.A., INC. ("Home Depot") is a home improvement

retail corporation that sells tools, construction products, appliances, and services. Home Depot espouses values of "doing the right thing" and "building strong relationships" on "trust, honesty and integrity" and "listen[ing] to the needs of customers, associates, communities and vendors, treating them as partners."[4] Home Depot is a corporation organized under the laws of the State of Delaware, and at all relevant times has conducted business within Illinois and this judicial district including at its facility located at 4555 S. Western Blvd, Chicago, IL 60609, Store #1986. Defendant HOME DEPOT U.S.A., INC. was, at all times material to this Complaint, the employer and principal of the Defendant Chicago Police Officers and Defendant Home Depot employees described below.

22.     Defendant Police Officers ANGEL MARTINEZ (#5124) and ALVAREZ (first name unknown) are City of Chicago employees with the Chicago Police Department. They are sued in their individual capacities. At all times material to this Complaint, Defendants MARTINEZ and ALVAREZ acted under color of state law as police officers of the City of Chicago and employees of Home Depot and acted in the course of and within the scope of their employment.

23.     Defendants ALEJANDRO ROJAS, DONNIE REID, VALERIA SORIA, TIM PATER, SHAWN GAYTAN and MATTHEW DOMINIAK ("the Named Home Depot Defendants") were, at all times material to this Complaint, employees of Home Depot U.S.A., Inc. Defendants GAYTAN and PATER are law enforcement officers who were, at all times material to this Complaint, employees of Home Depot U.S.A., Inc. through secondary employment. They are sued in their individual capacities.

24.     Defendant CHICAGO POLICE OFFICER JOHN DOES are City of Chicago employees with the Chicago Police Department. They are sued in their individual capacities for

---

[4] *Our Values*, Home Depot, https://corporate.homedepot.com/page/our-values (last visited Aug. 3, 2024)

violating the constitutional rights of the Individual Plaintiffs. At all times material to this Complaint, these defendants acted under color of state and municipal law as police officers of the City of Chicago and employees or agents of Home Depot and acted in the course and within the scope of their employment. The true names and identities of these defendants are unknown to Plaintiffs, who therefore sue these Defendants by such fictitious names. Plaintiffs will seek leave to amend their complaint to include the true names and identities of these Defendants when they have been ascertained.

25.    Defendant HOME DEPOT JOHN DOES are employees of Home Depot. They are sued in their individual capacities for violating the Individual Plaintiffs' rights. The true names and identities of these Defendants are unknown to Plaintiffs, who therefore sue these Defendants by such fictitious names. Plaintiffs will seek leave to amend their complaint to include the true names and identities of these Defendants when they have been ascertained.

## FACTUAL ALLEGATIONS

### Treatment of Asylum Seekers from Venezuela and South America in Chicago

26.    On August 31, 2022, Texas Governor Greg Abbott began sending buses of newly arrived migrants — particularly asylum seekers — to Chicago.[5]

27.    This recent increase in asylum seekers from Venezuela and other South American countries coincides with what Chicago Mayor Brandon Johnson and Illinois Governor J.B. Pritzker have described as a "critical workforce shortage[]" facing the region.[6]

---

[5] https://www.chicago.gov/city/en/sites/texas-new-arrivals/home.html
[6] Press Release, J.B. Pritzker, Governor of Illinois & Brandon Johnson, Mayor of Chicago, Joint Letter From Mayor Brandon Johnson And Governor JB Pritzker Calling Upon The Federal Government To Streamline Work Authorization For Non-citizens When States Demonstrate A Public Benefit And Critical Workforce Shortages (Aug. 28, 2023), https://www.chicago.gov/city/en/depts/mayor/press_room/press_releases/2023/august/JointLetterFromMayorBrandonJohnsonAndGovernorJBPritzkerStreamlineWorkAuthorization.html

28.     Mayor Johnson and Governor Pritzker have implored federal authorities to address this labor shortage by creating expanded pathways to work authorization: "This would unquestionably contribute 'significant public benefit' to our nation's labor shortages while providing non-citizens, like the thousands of asylum seekers we serve, a faster and more streamlined pathway to self-sufficiency."[7]

29.     Despite Mayor Johnson and Governor Pritzker's acknowledgement of lack of labor in Chicago and pleas for help, the federal government has failed to act, and recent arrivals continue to face considerable barriers establishing themselves in their new home, including barriers to work authorization.

30.     Most asylum seekers must wait at least six months before the federal government will grant them employment authorization documents providing a route to employment in the formal economy.[8]

31.     Because migrants must sustain themselves in the interim, they often turn to work in the informal economy.

32.     For migrants who do find work in Chicago, stories of wage theft, including underpayment or no payment for work performed, are common.[9]

---

[7] *Id.*

[8] 8 CFR 208.7(a)(2) (establishing federal timing for work authorization); *see also* Nicole Narea, *Immigrants could help the US labor shortage — if the government would let them*, VOX, May 22, 2022, https://www.vox.com/policy-and-politics/22933223/work-permit-uscis-backlog-immigration-labor-shortage

[9] https://www.citybureau.org/newswire/2024/2/29/what-chicago-migrants-face-when-looking-for-work.

**Discriminatory and Unlawful Detentions at Home Depot Store #1986**



33.     Defendant Home Depot took steps to increase security presence at Home Depot Store #1986, in or around October 2023, including an effort to hire off-duty CPD officers working secondary employment.

34.     The effort to bolster security at Home Depot Store #1986 by recruiting and hiring off-duty CPD officers to provide security was done with the knowledge and consent of Defendant City of Chicago.

35.     Home Depot and CPD entered this agreement together in approximately October 2023.

36.     Day laborers seeking work have done so with the acquiescence of Defendant Home Depot — largely without incident — for decades.

37.     Beginning around Fall 2023, a significant number of day laborers from Venezuela

and other South American countries began arriving at Home Depot Store #1986.

38.    Venezuelan day laborers have sought, and continue to seek, work in a specific area, situated near the west entrance to the Home Depot Store #1986 parking lot facing Western Ave.

39.    Day laborers of other ethnicities have sought, and continue to seek, work in a different area of the parking lot, situated nearer to the south entrance to Home Depot Store #1986, facing 47th Street.

40.    Defendants Home Depot, CPD Defendants Alvarez, Martinez, some or all of the individual Named Home Depot Defendants, and some or all of the Defendant Does were and are aware that day laborers congregate and historically have congregated on or near the parking lot at Home Depot Store #1986 seeking work.

41.    Defendants Home Depot, CPD, Defendants Alvarez and Martinez, the Named Home Depot Defendants and Defendant Does were and are aware that day laborers from Venezuela and other South American countries have, sought, and continue to seek, work in a specific area, situated near the west entrance to the Home Depot Store #1986 parking lot facing Western Avenue while day laborers of other ethnicities have sought, and continue to seek, work in a different area of the parking lot, situated nearer to the south entrance to Home Depot Store #1986, facing 47th Street.

42.    Since larger numbers of Venezuelans have begun seeking work at Home Depot Store #1986, Defendants Alvarez, Martinez, Rojas, Reid, Dominiak, Pater, Soria, Gaytan, CPD, Chicago Police Officer John Does, and Home Depot John Does have placed a specific and excessive attention on harassing, moving, and detaining day laborers perceived to be Venezuelan seeking work near the Western Boulevard entrance to the parking lot of Home Depot Store #1986.

43.    Defendant Soria is an Asset Protection Supervisor employed by Home Depot

U.S.A., Inc.

44.     Defendant Soria was aware of Defendants' scheme to target Plaintiffs based on, among other things, their race, ethnicity, and national origin.

45.     Defendant Soria was present at Home Depot Store #1986 on the days of Plaintiffs Gimenez, Camacho, and Montano's detention at the store and helped facilitate their detention and physical abuse.

46.     Defendant Dominiak is an Asset Protection Supervisor employed by Home Depot U.S.A., Inc.

47.     Defendant Dominiak was aware of Defendants' scheme to target Plaintiffs based on, among other things, their race, ethnicity, and national origin.

48.     Day laborers seeking work at Home Depot Store #1986 who typically congregate near the entrance to the parking lot of Home Depot Store #1986 near 47th Street who are not Venezuelan are not subject to the same harassment as day laborers perceived to be Venezuelan near the Western Boulevard entrance.

49.     Plaintiffs are a group of day laborers who were victims of Home Depot and the City's abusive scheme to target and exploit workers based on, among other things, their race, ethnicity, and national origin.

50.     Each Plaintiff was detained and assaulted while seeking work at Home Depot Store #1986 by an off-duty CPD officer working secondary employment.

51.     Each Plaintiff was insulted with xenophobic racial epithets, including "Mexicans are the real day laborers," "Pinche Venezolano" (meaning "Fucking Venezuelan"), and "You don't belong here."

52.     Some Plaintiffs were released from the back room of the Home Depot and free to

leave with no criminal legal system consequences.

53.     Other Plaintiffs were charged with criminal trespass, and their cases were either dismissed or stricken.

54.     Plaintiffs were shocked to be singled out for abuse by members of the Chicago Police Department collaborating with Home Depot because they sought work at a location that has long served as an unproblematic place to seek work.

55.     The Defendant City of Chicago, its Chicago Police Department, the named and unnamed individual officers, and Home Depot and individually named Home Depot Defendants have collectively conspired to harm and criminalize Plaintiffs based on their national origin, ethnicity, race, and attempts to support themselves and their families.

### *The Unlawful abuse and Detention of Plaintiff Alfonzo Gabriel Arias*

56.     Alfonzo Arias is a 26-year-old man from Valencia, Venezuela.

57.     Mr. Arias moved to Chicago in September 2023.

58.     On December 8, 2023, Mr. Arias traveled to the Home Depot Store #1986 with the intention of seeking short-term employment.

59.     On that day, Mr. Arias entered the parking lot to seek work near a group of other workers.

60.     A John Doe officer, clothed in black with metal handcuffs, a firearm, and a vest with the word "POLICE" printed on the back asked him to leave the premises.

61.     Mr. Arias complied and left the parking lot by moving to the public sidewalk running along Western Boulevard.

62.     Mr. Arias was then approached by three Defendants in vests with the word "POLICE." which included Defendant Shawn Gaytan.

63.     One Defendant who approached Mr. Arias wore a full CPD uniform.

64.     The group of men who approached Mr. Arias included Defendant Gaytan and Defendant CPD Officer Does.

65.     The Defendant John Doe Officer in the vest who requested Mr. Arias exit the parking lot grabbed him by his shirt and threw him to the ground.

66.     While Mr. Arias was still on the ground, one of the Defendants in vests hit him in the stomach and handcuffed him.

67.     Mr. Arias was then forcibly dragged into Home Depot Store #1986 by the Defendants in vests through the front door.

68.     Mr. Arias was taken by two Defendants in vests to a room on the western side of the building.

69.     The men told Mr. Arias that they were police.

70.     Three Defendants in vests, including Defendant Gaytan, were present in the room.

71.     While handcuffed in the room with the door closed, Mr. Arias was shoved onto a bench by one Defendant in a vest.

72.     Mr. Arias was then struck in the face, ribs, and stomach by Defendant Gaytan and another Defendant in a vest.

73.     Mr. Arias was also choked by one of the Defendants in a vest.

74.     While Mr. Arias was being beaten and choked by the Defendants in vests, they laughed.

75.     The Defendant in a vest who did not choke Mr. Arias said in English to the Defendant in a vest who choked him that he should stop or he would kill Mr. Arias.

76.     During his time being beaten in the room, Mr. Arias was also told in Spanish by Defendant Gaytan that, among other things:

        a.     That the Defendant Gaytan "would get [Mr. Arias] deported";

        b.     That Home Depot "did not want immigrants here" and that they knew Mr. Arias "is an immigrant";

        c.     That if Mr. Arias said anything about the incident, that the Defendant in the vest would have him deported and that he "had authority to do that as a police officer";

        d.     That Mr. Arias was "trash"; and

        e.     Defendant Gaytan told Mr. Arias that if he saw Mr. Arias near the Home Depot again, that it "would be worse."

77.     Mr. Arias was released after approximately ten minutes.

78.     Mr. Arias subsequently filed a complaint alleging that he was battered at Home Depot Store #1986.

79.     Mr. Arias filed the police report after consulting with and with the assistance of Latino Union on December 8, 2023.

80.     Mr. Arias was not charged with a crime.

81.     Mr. Arias went to the hospital the same day he was beaten by the Defendants in vests.

82.     Mr. Arias was diagnosed with a fracture of his hand/wrist.

83.     Mr. Arias was in extreme pain for approximately two weeks.

84.     Mr. Arias continues to suffer emotional distress and fear of continued abuse from the Defendants and other officers if he were to seek work near Home Depot Store #1986.

***The Unlawful Abuse and Detention of Plaintiff Betuel Castro Camacho***

85.     Betuel Castro Camacho is a 37-year-old man from Bogota, Colombia.

86.     Mr. Camacho moved to Chicago on January 6, 2024.

87.     On May 22, 2024, Mr. Camacho traveled to Home Depot Store #1986 with the intention of seeking short-term employment.

88.     On that day, Mr. Camacho entered the parking lot to seek work near a group of other workers.

89.     Mr. Camacho was approached by Defendant Rojas and Defendant Pater. Defendant Pater wore a black vest that said "POLICE."

90.     Defendant Rojas was not wearing a vest, but wore a black t-shirt and carried a gun.

91.     Defendants Rojas and Pater herded a group of other workers toward the parking lot exit facing Western Boulevard.

92.     As Mr. Camacho was walking toward the exit, Defendant Pater approached him from behind and handcuffed him.

93.     Mr. Camacho told Defendant Pater that he had recently dislocated his shoulder.

94.     When Mr. Camacho told Defendant Pater about his injury, Defendant Pater applied more pressure to that arm.

95.     As he was handcuffed, neither Defendant Rojas nor Defendant Pater explained to Mr. Camacho why he was being detained.

96.     Mr. Camacho was pushed into Home Depot Store #1986 through the front door by Defendant Rojas and Defendant Pater.

97.     Mr. Camacho was taken by Defendant Rojas and Defendant Pater to a room on

the western side of the building.

98.     Defendant Dominiak was present in the room with Defendant Rojas and Defendant Pater.

99.     While handcuffed in the room with the door closed, Defendant Rojas shoved Mr. Camacho.

100.    Mr. Camacho fell, striking his eye.

101.    Mr. Camacho was then struck on the abdomen by Defendant Rojas approximately four times with a closed fist.

102.    As Defendant Rojas struck Mr. Camacho, he said "don't look at me" in Spanish.

103.    Defendants Rojas and Pater primarily spoke English, but Defendant Rojas stopped striking Mr. Camacho at one point to tell him in Spanish that he "took a shit on the American flag."

104.    Defendant Pater struck Mr. Camacho approximately three times with an open palm.

105.    Mr. Camacho told Defendants Rojas and Pater that he is Colombian.

106.    In response, Defendant Rojas said to Mr. Camacho that he was lying and that he was Venezuelan.

107.    Defendants Rojas and Pater continued to insult him based on their belief that he was Venezuelan.

108.    Defendant Dominiak heard and observed this entire incident with Mr. Camacho.

109.    Defendant Rojas took Mr. Camacho's belongings, including his phone, backpack, and hat.

110.    Mr. Camacho's phone was cracked when it was returned to him.

111. Defendant Rojas participated in the detention, arrest and prosecution of Mr. Camacho, initiating a criminal complaint against him.

112. After approximately one hour, on-duty police officers arrived at the back room where Mr. Camacho was being held.

113. The on-duty police gave Mr. Camacho a paper that was written in English which Mr. Camacho could not read and did not understand because he does not speak or understand English.

114. Mr. Camacho signed the paper out of fear that he would not be allowed to leave if he did not sign and because he was afraid of being hit again.

115. Mr. Camacho was then released from the Home Depot.

116. Mr. Camacho called to make a doctor's appointment on the same day.

117. On June 24, 2024, Mr. Camacho received an x-ray.

118. Mr. Camacho later learned that he was charged with Class B misdemeanor criminal trespass to land.

119. Mr. Camacho appeared for a criminal hearing before an Illinois court on July 8, 2024.

120. At that hearing, the charges against Mr. Camacho were dismissed.

***The Unlawful Abuse and Detention of Plaintiff Willian Gimenez Gonzalez***

121. Willian Alberto Gimenez Gonzalez is a 37-year-old man from Yaracuy, Venezuela.

122. Mr. Gimenez moved to Chicago on October 12, 2023.

123. On October 25, 2023, Mr. Gimenez arrived at Home Depot Store #1986 around 7:00 AM hoping to find work.

124.   Mr. Gimenez stood near the sign to the store's Western Boulevard entrance.

125.   Around 2:00 PM, Defendant Rojas, Defendant Martinez, and two Defendants Mr. Gimenez believed to be African American approached him.

126.   The two African American Defendants wore black clothing and black vests.

127.   Defendant Martinez also wore a black vest.

128.   Defendant Rojas wore a hooded sweatshirt and flat-brimmed cap.

129.   The two African American Defendants in black vests carried firearms and handcuffs.

130.   Defendant Martinez also carried handcuffs.

131.   The two African American Defendants in vests are among the CPD and Home Depot John Doe Defendants named herein.

132.   One of the African American Defendants dressed in a vest handcuffed Mr. Gimenez.

133.   Defendant Rojas appeared to be the boss and/or supervisor of Defendant Martinez and the other Defendants who approached Mr. Gimenez, providing them with instructions that they promptly followed. The other Defendants apprehended Mr. Gimenez only after Defendant Rojas shouted something in Mr. Gimenez's direction in English.

134.   While handcuffed, Defendant Rojas pulled Mr. Gimenez by his shirt into the Home Depot while Defendant Martinez pulled Mr. Gimenez by his arm.

135.   Defendants Rojas and Martinez pulled Mr. Gimenez into a private back room on the western side of the building while accompanied by the two African American Defendants.

136.   Once inside, Defendant Rojas handcuffed Mr. Gimenez to a seat and the Defendants who detained Mr. Gimenez removed his belongings.

137.    Another day laborer was handcuffed in the room with Mr. Gimenez.

138.    A Caucasian woman with black hair and civilian clothing was inside the room.

139.    The Caucasian woman with black hair and civilian clothing is a Home Depot Doe Defendant.

140.    While Mr. Gimenez was handcuffed to the seat, there were six other people in the room: Defendant Rojas, Defendant Martinez, the two African American Defendants in black vests, the Caucasian Defendant, and another day laborer.

141.    Defendant Rojas said to Mr. Gimenez, "Pinche venezolanos. No me miren, aqui los vamos a hacer que siguan las leyes." (translated: "fucking Venezuelans. Do not look at me, here we are going to make you follow the laws.")

142.    Defendant Rojas also slapped Mr. Gimenez with an open hand approximately three times in his chest and face.

143.    Defendant Rojas slapped Mr. Gimenez each time he looked toward him or tried to speak.

144.    Defendant Rojas struck the other day laborer handcuffed in the room with Mr. Gimenez approximately six times.

145.    Defendant Martinez and the other Defendants that detained Mr. Gimenez watched while Defendant Rojas was striking Mr. Gimenez and subjecting him to anti-Venezuelan insults. Defendant Martinez and these other Defendants refused to intervene to stop Defendant Rojas.

146.    Defendant Rojas gave Mr. Gimenez a paper that was written in English which Mr. Gimenez could not read and did not understand because he does not speak or understand English.

147.    Defendant Rojas demanded that Mr. Gimenez sign the paper while he wore handcuffs.

148.    Mr. Gimenez signed the paper out of fear that he would not be allowed to leave if he did not sign and because he was afraid of being hit again.

149.    After Mr. Gimenez was held in the office for approximately 40 minutes, two on-duty CPD officers arrived.

150.    The on-duty CPD officers retrieved a key for the handcuffs from Defendant Martinez and unlocked his handcuffs.

151.    The on-duty CPD officers then put Mr. Gimenez in a new pair of handcuffs.

152.    The on-duty CPD officers took Mr. Gimenez out of Home Depot Store #1986 and to a squad car while wearing handcuffs.

153.    Defendants Rojas and Martinez participated in the detention and arrest of Mr. Gimenez, initiating a criminal complaint against him.

154.    Defendants Rojas and Maritnez filled out the criminal complaint form together before handing it to the on-duty CPD officers.

155.    The on-duty officers drove Mr. Gimenez to a Chicago Police Department station.

156.    Mr. Gimenez was held in a cell for approximately six hours. He was released at approximately 9:00 PM.

157.    Mr. Gimenez was charged with Class B misdemeanor criminal trespass to land.

158.    Mr. Gimenez appeared for a criminal hearing before an Illinois Court on October 9, 2024.

159.    At that hearing, Mr. Gimenez's case was dismissed.

*The Unlawful Abuse and Detention of Plaintiff Luis Adrian Gomez*

160.　Luis Antonio Adrian Gomez is a 28-year-old man from Isla Margarita, Nueva Esparta, Venezuela.

161.　On January 10, 2024, Mr. Gomez arrived at Home Depot #1986 in the morning hoping to find work.

162.　Mr. Gomez stood near the trees near the Western Boulevard entrance to the parking lot of Home Depot Store #1986.

163.　After about an hour, Mr. Gomez was instructed by Defendant Martinez, who wore a black vest with "POLICE" on the back and carried a handgun on his hip, that he cannot look for work at Home Depot Store #1986.

164.　As Mr. Gomez attempted to comply, Defendant Martinez pushed Mr. Gomez from behind.

165.　Defendant Martinez then threw Mr. Gomez to the ground.

166.　Another Defendant, identified as Officer Alvarez (first name unknown), approached Mr. Gomez while he was on the ground and assisted Defendant Martinez in handcuffing Mr. Gomez.

167.　As he was being thrown to the ground by Defendant Martinez, Mr. Gomez suffered a bruise to his right eye and pain in the back of his head.

168.　 Defendant Martinez and Defendant Alvarez took Mr. Gomez handcuffed into a private back room in Home Depot, located on the western side of the building.

169.　Once in the back room, Defendant Martinez removed his vest.

170.　Defendant Martinez threw Mr. Gomez into a wall, and Mr. Gomez fell onto a bench.

171.    Defendant Martinez hit Mr. Gomez in the chest and rib area on the right side of his body three times with a closed fist.

172.    Defendant Martinez and Defendant Alvarez took a cell phone, wallet, and documents Mr. Gomez was carrying.

173.    The on-duty cops who arrived later returned Mr. Gomez's items.

174.    Mr. Gomez was detained in the back room of Home Depot Store #1986 for approximately one and a half hours.

175.    On-duty CPD officers arrived and had a conversation that appeared to be friendly with Defendants Martinez and Officer Alvarez.

176.    The on-duty CPD officers escorted him outside of the Home Depot.

177.    The on-duty CPD officer instructed Mr. Gomez to sign a paper that was written in English that he could not understand because he does not speak or understand English.

178.    Mr. Gomez signed the paper out of fear that he would not be allowed to leave if he did not sign and because he was afraid he would be hit again.

179.    Mr. Gomez later learned that he was charged with Class B misdemeanor criminal trespass to land.

180.    Defendant Martinez participated in the detention and arrest of Mr. Gomez, initiating a criminal complaint against him.

181.    Mr. Gomez initially appeared in an Illinois court on January 31, 2024.

182.    Mr. Gomez returned to court on April 10, 2024. At that hearing, the charges were dismissed.

***The Unlawful Abuse and Detention of Plaintiff Juan Carlos Montano***

183.    Juan Carlos Montano is a 45-year-old man from Maturin, Venezuela.

184.    Mr. Montano moved to Chicago in November 2023.

185.    On December 20, 2023, Mr. Montano arrived at Home Depot Store #1986 around 7:00 AM with the intention of meeting a person with whom he had previously discussed a job.

186.    Mr. Montano waited for the person with whom he had discussed a job outside of the Home Depot Parking lot on a public sidewalk near the entrance on Western Boulevard.

187.    At around 9:00 AM, five Defendants, four of whom wore black vests with the word "POLICE" on their backs, approached Mr. Montano.

188.    One of the Defendants was an older white man, two were African American, and Mr. Montano believes that the other two were Mexican American.

189.    The men who approached Mr. Montano were Defendants Martinez, Pater, Gaytan, Reid, and a fifth Defendant named as a John Doe Defendants herein.

190.    Defendants Gaytan and Reid pushed Mr. Montano against a wall, punching him in the torso and kneeing him.

191.    Defendant Martinez handcuffed Mr. Montano, forcing his hands around his backpack and causing Mr. Montano pain in his shoulders.

192.    As he was handcuffed, Defendant Pater issued commands in English which Mr. Montano could not understand.

193.    None of the Defendants who detained him explained to Mr. Montano why he was being detained.

194.    Defendants Martinez and Reid then pulled Mr. Montano through the Home Depot into a private room inside the store on the western side of the building.

195.    Defendant Pater, Defendant Reid, and Defendant Doe remained outside while

Mr. Montano was being pulled into the office.

196. Defendant Martinez struck Mr. Montano three times from behind while in the office.

197. In the office, Defendant Martinez also yelled offensive epithets at Mr. Montano, including: "You don't belong here."; "Pinche Venezolano." (Translated: "Fucking Venezuelan."); and "You can't work here, you're illegal."

198. Defendants Reid and Martinez also conversed in English and laughed at Mr. Montano while they detained him in the office.

199. At approximately 11:30 AM, on-duty CPD officers arrived and formally arrested Mr. Montano.

200. Defendant Reid was present for and participated in the detention and arrest of Mr. Montano, initiating a criminal complaint against him.

201. The on-duty CPD officers who formally arrested Mr. Montano transported him to a CPD police station.

202. Mr. Montano was detained at the CPD police station for roughly two hours.

203. Mr. Montano was charged with criminal trespass.

204. Mr. Montano appeared for a criminal hearing before an Illinois court on March 6, 2024.

205. At that hearing Mr. Montano's case was dismissed.

**CPD History of Rights Violations, Unlawful Arrests, and Abuses by Off-Duty Officers**

206. The harms experienced by Plaintiffs at the hands of the Chicago Police Department and Home Depot, are a continuation of a long history of CPD abuses of day laborers, Black and Latino communities, migrants. and other persons of color.

207.     The scheme, joint action and conspiracy instituted at Home Depot Store #1986 is not a new one, and in fact, is an amalgamation of past abuses wrapped into one.

208.     The Chicago Police Department has a long history of abusing day laborers seeking work at corners and hardware stores.

209.     In 2008, a different group of day laborers sued the City of Chicago, various Chicago Police Department officers, and Home Depot for a similar series of abuses against *jornaleros*. *See Chicago Day Laborer Committee, et al. v. City of Chicago, et al.*, 1:08-cv-03425 (N.D. Ill. 2008).

210.     In *Chicago Day Laborer Committee, et al. v. City of Chicago, et al.*, day laborers stood on public sidewalks seeking work near a manufacturing business and the same Home Depot store located at 47th and Western. *Id.*

211.     At the manufacturing business, police arrived and detained the plaintiffs while they were standing on the public sidewalk. The plaintiffs were arrested, taken to a police station, booked, and charged with criminal trespass. *Id.*

212.     While standing outside the parking lot at the 47th and Western Home Depot, three of the plaintiffs were asked by a person in a white van inside of the parking lot to approach them. As the plaintiffs entered the parking lot, unmarked cars approached them and arrested them for criminal trespass. *Id.*

### CPD's Policies, Practices and Customs

213.     The Chicago Police Department has, for decades, and more specifically, from 2008 to the present, a pattern and practice of Chicago police officers working secondary employment using unreasonable excessive and deadly force and making false arrests.

214.     This pattern and practice is evidenced, *inter alia*, by:

a. The numerous incidents of excessive force and false arrests occurring over several months in 2023 and 2024 as alleged in this complaint against CPD officers working secondary employment;

b. From 2006 to 2021, the City has paid more than $10 million to settle at least 32 lawsuits against off-duty Chicago police officers;

c. From 2014 to 2016, there were at least 11 complaints of excessive force and unnecessary display of a weapon filed against CPD officers working secondary employment.

d. The facts set forth in *Chicago Day Laborer Committee, et al. v. City of Chicago, et al.*, 1:08-cv-03425 (N.D. Ill. 2008).

215. CPD did not discipline any, or only a disproportionate few, of the officers named in these incidents, including the Defendant Officers, and they remain working for the CPD and maintaining secondary employment.

216. The CPD has maintained, for decades and up until the present, grossly inadequate policies, practices and customs concerning secondary employment ("moonlighting") of off-duty officers, as evidenced by, *inter alia*:

a. The CPD does not have a policy that requires officers to report and get approval for engaging in secondary employment, including police-related secondary employment;

b. The CPD does not tag or categorize whether excessive force complaints involve secondary employment**;**

c. The CPD bans disclosure of secondary jobs;

d. The CPD does not monitor where or when its officers work secondary

employment;

e.  As CPD officers, they are exempt from state licensing requirements and can therefore carry weapons and handcuffs;

f.  CPD officers regularly violate the CPD's ban on officers working security in bars and other liquor establishments without consequence;

g.  There is no requirement that CPD officers report in to the Department when beginning or ending their working secondary employment shifts;

h.  There is no limit on how many hours an officer can work at his secondary employment after working an on-duty shift;

i.  The officer, rather than the Department, organizes the secondary employment, controlling where, when and for whom its officers moonlight.

217.     In 2017, the U.S. Department of Justice found, in a report that was written after an exhaustive pattern and practice investigation of the CPD, and was served on Mayor and City policymaker Rahm Emanuel:

"That a significant amount of alleged officer misconduct involves officers working secondary employment …indicat[ing] that there is a need for a thorough review of the policies and accountability measures related to officers' secondary employment.

218.     In 2017, the City's Office of the Inspector General recommended that the Chicago Police Department adopt a more rigorous secondary employment policy to avoid the potential for officer burnout, corruption, and legal exposure.

219.     In 2021, Mayor and City policymaker Lori Lightfoot acknowledged the gross inadequacies of the CPD's secondary employment policies and practices, and the need to reform them, but to date the City, its policymakers, and the CPD, despite having actual notice for years,

have taken no meaningful steps to remedy these gross inadequacies.

**Injury to Plaintiff Latino Union**

220.     Defendants' conduct has injured and continues to injure Plaintiff Latino Union.

221.     Plaintiff Latino Union's mission is to "build[] power with Day Laborers, Household Workers, and other contracted workers to fight for social and economic justice through education, organizing, advocacy, and coalition building."[10]

222.     Defendants' conduct has frustrated and continues to frustrate Latino Union's mission of building power with day laborers to fight for social and economic justice in Chicago. In response, Latino Union has diverted its limited resources to investigating and remedying Defendants' conduct. Those resources would have been expended on other projects if not for Defendants' conduct described in this Complaint.

223.     Latino Union has diverted considerable staff time and monetary resources to analyzing the nature and scope of Defendants' alleged unlawful conduct, including interviewing affected day laborers, supporting their efforts to hold City employees accountable for their unlawful conduct, educating affected individuals regarding their rights, and learning more about abuses near Home Depot's facility and at police stations.

224.     Additionally, in order to counteract Defendants' conduct, Latino Union has taken several other actions that it would not have taken but for Defendants' alleged unlawful conduct. These actions include, but are not limited to:

a.     Requiring staff to attend trainings on de-escalating situations involving law enforcement, including a training for the whole staff held on July 31, 2024, and an additional training for the organization's Day Labor Organizer.

---

[10] *About Us*, LATINO UNION OF CHICAGO, https://www.latinounion.org/about- (last visited July 30, 2024),

b. Creating and filling a new Day Laborer Outreach Specialist position focused on conducting outreach with day laborers near Home Depot Store #1986, educating them about their rights, connecting them to resources, and training them on how to address civil rights and other abuses through organizing.

c. Providing transportation for day laborers to criminal court dates arising from Defendants' unlawful conduct.

d. Developing a know your rights training for day laborers about their rights when interacting with law enforcement and the American criminal legal system.

e. Diverting over 300 hours of staff time away from other mission-critical activities in favor of activities related to combating Defendants' unlawful activities at Home Depot Store #1986.

f. Collaborating with reporters from the non-profit organization City Bureau on a story regarding the alleged abuses experienced by day laborers while working at Home Depot Store #1986.

g. Participating in a panel discussion on April 27, 2024 designed to inform social service providers working with newly arrived migrant populations on the rights of newly arrived migrants with a particular emphasis on their rights while working as day laborers.

225.    All of these activities have required the diversion and expenditure of financial resources and staff time.

226.    As a result of this diversion of resources, Latino Union has had to postpone, abandon, or limit previously planned activities. For example:

a. Latino Union's Day Labor Organizer is responsible for conducting outreach

with day laborers at ten different street corners throughout the City of Chicago. Prior to Defendants' unlawful conduct, he visited workers near Home Depot Store #1986 approximately once every one or two months. Defendants' unlawful conduct has forced him to visit Home Depot Store #1986 about every one or two weeks, forcing him to abandon planned visits to other street corners. Latino Union has not visited at least four designated street corners in more than three months, which it would have visited once a month, due to Defendants' unlawful conduct. As a result, Latino Union has been deprived of information about the experiences and problems faced by day laborers elsewhere in the City of Chicago.

b. Latino Union has had to dramatically reduce the time that it spends organizing household workers, one of the core constituencies of the organization who are central to its mission, including by decreasing the number of workshops conducted for that group of workers.

c. Latino Union has scaled back its involvement in multiple policy campaigns central to its mission, including by reducing the number of meetings it attends with the Chicago Paid Time Off coalition and the Gig Workers Alliance. As a result, the priorities of day labors and household workers are underrepresented in those policy campaigns.

227. Latino Union's core business activities include providing day laborers with "health and safety trainings; information about immigration rights; employment skills support; and education about preventing and reporting work accidents and wage theft" through its Day Labor

Program.[11] Defendants' unlawful conduct has interfered with the core business activities of Latino Union by impairing Latino Union's ability to provide day laborers with valuable information and trainings. For example:

a. By detaining day laborers who are lawfully seeking work and holding them inside Home Depot Store #1986, Defendants' have created a physical barrier preventing Latino Union organizers from reaching those day laborers with information about their rights, and from receiving information from those day laborers about their experiences. Latino Union staff have visited the area around Home Depot Store #1986 on multiple occasion while day laborers were being held inside Home Depot Store #1986.

b. Defendants' unlawful conduct has created an atmosphere of fear and intimidation among the day laborers who seek work near Home Depot Store #1986, preventing some day laborers from speaking with Latino Union about their experience out of a fear of being targeted for abuse by law enforcement. This has interfered with Latino Union's ability to provide day laborers with information about their rights and to receive information from day laborers about their experiences.

c. On multiple occasions when unlawfully detaining and harassing day laborers, Defendants have threatened Latino Union organizers who are in the vicinity of Home Depot Store #1986 with arrest, interfering with their ability to provide day laborers with trainings and information about their rights.

228.   Multiple members of Latino Union have been harmed by Defendants' unlawful

---

[11] *Day Labor Program/ Programa de Jornaleros*, LATINO UNION OF CHICAGO, https://www.latinounion.org/day-labor-program (last visited July 30, 2024).

conduct, including Betuel Camacho, Willian Alberto Gimenez Gonzalez, Luis Gomez, and Juan Carlos Montano.

229.    Latino Union members Betuel Camacho, Willian Alberto Gimenez Gonzalez, Luis Gomez, and Juan Carlos Montano voluntarily joined the organization and support its mission.

230.    Latino Union members Betuel Camacho, Willian Alberto Gimenez Gonzalez, Luis Gomez, and Juan Carlos Montano are actively involved in this lawsuit— in which they serve as Individual Plaintiffs. They are involved in major case decisions, receive regular updates about the case, and have had the opportunity to provide input on and to direct the case.

### LEGAL CLAIMS

### COUNT I – 42 U.S.C. § 1983
### Violation of the Fourth Amendment – Excessive Force
### (All Plaintiffs Against Defendants Martinez and Alvarez)

231.    Plaintiffs repeat and re-allege the foregoing paragraphs as if fully set forth herein.

232.    Count I is alleged against Defendants Martinez, Alvarez, and Doe CPD Officers.

233.    As described in detail above, the Defendant CPD Officers used unreasonable and excessive force, without legal cause, against Plaintiffs and/or failed to intervene to prevent the use of excessive force against Plaintiffs, in violation of Plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution.

234.    As a direct and proximate result of the misconduct described in this Count, Plaintiffs suffered physical and emotional injuries and damages as set forth above.

### COUNT II – 42 U.S.C. § 1983
### Violation of the Fourth Amendment – False Arrest
### (All Plaintiffs Against Defendants Martinez, Alvarez, and Doe CPD Officers)

235.    Plaintiffs repeat and re-allege the foregoing paragraphs as if fully set forth herein.

236.    Count II is alleged against Defendants Martinez, Alvarez, and Doe CPD Officers.

237.    The actions of the Defendant CPD Officers in falsely detaining, arresting and imprisoning Plaintiffs without reasonable suspicion or probable cause and/or failing to intervene to prevent the false arrest of Plaintiffs violated Plaintiffs' Fourth and Fourteenth Amendment rights to be free from unreasonable search and seizure.

238.    As a direct and proximate result of the misconduct described in this Count, Plaintiffs suffered physical and emotional injuries and damages as set forth above.

### COUNT III – 42 U.S.C. § 1983
### Violation of the Fourth and Fourteenth Amendments – Unlawful Search and Seizure of Property
### (Plaintiffs Gomez, Montano, Camacho and Gimenez Against Defendants Martinez and Alvarez)

239.    Plaintiffs repeat and re-allege the foregoing paragraphs as if fully set forth herein.

240.    Count III is alleged against Defendants Martinez and Alvarez.

241.    The actions by the Defendant CPD Officers in knowingly searching and seizing Plaintiffs' property during the events described in the Complaint, without a warrant, probable cause, or legal justification, violated Plaintiffs' right to be free from unreasonable search and seizure of Plaintiffs' property guaranteed by the Fourth and Fourteenth Amendments.

242.    As a direct and proximate result of the misconduct described in this Count, Plaintiffs suffered physical and emotional injuries and damages as set forth above.

### COUNT IV – 42 U.S.C. § 1983
### Violation of the Fourth Amendment – Unlawful Pretrial Detention
### (Plaintiffs Gomez, Montano, Camacho and Gimenez Against Defendants Martinez, Alvarez, and Doe CPD Officers)

243.    Plaintiffs repeat and re-allege the foregoing paragraphs as if fully set forth herein.

244.    Count IV is alleged against Defendants Martinez, Alvarez, and Doe CPD Officers.

245.    The Defendant CPD Officers caused Plaintiffs to be unreasonably seized, detained, imprisoned and deprived of their liberty without probable cause to believe that they had committed

a crime, in violation of their rights secured by the Fourth and Fourteenth Amendments to the United States Constitution.

246.     As a direct and proximate result of the misconduct described in this Count, Plaintiffs suffered physical and emotional injuries and damages as set forth above.

## COUNT V – 42 U.S.C. § 1983
### Violation of the Fourteenth Amendment – Equal Protection
### (All Plaintiffs Against Defendants Martinez, Alvarez, and Doe CPD Officers)

247.     Plaintiffs repeat and re-allege the foregoing paragraphs as if fully set forth herein.

248.     Count V is alleged against Defendants Martinez, Alvarez, and Doe CPD Officers.

249.     The Defendant CPD Officers subjected Plaintiffs, all of whom are Latino day laborers of Venezuelan or Colombian national origin, to excessive force and/or unlawful detention and arrest, with discriminatory motive and intent, and racial animus toward each and every Plaintiff individually and as a group, because of their race and/or ethnicity.

250.     As a direct and proximate result of the misconduct described in this Count, Plaintiffs suffered physical and emotional injuries and damages as set forth above.

## COUNT VI – 42 U.S.C. §§ 1985, 1986
### Racially Motivated Conspiracy to Deprive Plaintiffs of Their Constitutional Rights
### (All Plaintiffs Against Defendants Martinez, Alvarez, Pater, Gaytan, Rojas, Reid, Dominiak, Soria, Doe CPD Officers, and Doe Home Depot Officers)

251.     Plaintiffs repeat and re-allege the foregoing paragraphs as if fully set forth herein.

252.     Count VI is alleged against Defendants Martinez, Alvarez, Pater, Gaytan, Rojas, Reid, Dominiak, Soria, Defendant CPD Officer Does, and Defendants Home Depot Does.

253.     Some or all of the individual Defendants together reached an understanding, engaged in a course of conduct, and otherwise jointly acted and/or conspired among and between themselves to commit the unconstitutional overt acts set forth in the facts above.

254.     Because said conspiracy or conspiracies and the overt acts in furtherance thereof,

including, but not limited to, each and every act alleged in the facts above, were done with the knowledge and purpose of depriving Plaintiffs, all of whom are Latino day laborers of Venezuelan or Colombian national origin, of the equal protection of the laws and/or of equal privilege and immunities under the law, and with racial animus toward each and every Plaintiff individually and as a group, because of their race and/or ethnicity, and the other victims of this racially motivated conspiracy, the individual Defendants also deprived Plaintiffs of their right to equal protection of the laws under the Fourteenth Amendment, and 42 U.S.C. § 1985.

255.    Additionally, or alternatively, these Defendants, knowing that the above § 1985 conspiracy to deprive Plaintiffs of their constitutional rights was about to be committed, and having the power to prevent or aid in preventing the commission of the acts in furtherance of said conspiracy, neglected and/or refused to do so, in violation of 42 U.S.C. § 1986.

256.    As a direct and proximate result of the misconduct described in this Count, Plaintiffs suffered physical and emotional injuries and damages as set forth above.

### COUNT VII – 42 U.S.C. § 1983
### Conspiracy to Deprive Plaintiffs of Their Constitutional Rights
### (All Plaintiffs Against Defendants Martinez, Alvarez, Pater, Gaytan, Rojas, Reid, Dominiak, Soria, Doe CPD Officers, and Doe Home Depot Officers)

257.    Plaintiffs repeat and re-allege the foregoing paragraphs as if fully set forth herein.

258.    Count VII is alleged against Defendants Martinez, Alvarez, Pater, Gaytan, Rojas, Reid, Dominiak, Soria, Doe CPD Officers, and Doe Home Depot Officers.

259.    Some or all of the individual Defendants agreed between and among themselves and with other individuals to deprive Plaintiffs of their constitutional rights, guaranteed by the Fourth and Fourteenth Amendments, as described in the various paragraphs of this Complaint.

260.    In furtherance of the conspiracy, each of the coconspirators engaged in and facilitated numerous overt acts, including but not limited to those set forth above – such as seizing,

detaining, and imprisoning Plaintiffs without probable cause to believe that they had committed a crime, and physically abusing Plaintiffs – and was an otherwise willful participant in joint activity.

261.    Each of the individual Defendants was a voluntary participant in the common venture to deprive Plaintiffs of their Fourth and Fourteenth Amendment rights. Each of the Defendant Officers personally participated in the unconstitutional conduct or acted jointly with other Defendants who participated or acquiesced in the unconstitutional conduct, or was at least aware of the conduct or plan, and failed to take action to prevent such conduct from occurring.

262.    As a direct and proximate result of the misconduct described in this Count, Plaintiffs suffered physical and emotional injuries and damages as set forth above.

**COUNT VIII – 42 U.S.C. § 1981**
**Denial of Equal Protection Based on Race in the Making and Enforcement of Contracts**
**(All Plaintiffs Against Defendants Martinez, Alvarez, Pater, Gaytan, Rojas, Reid,**
**Dominiak, Soria, Doe CPD Officers, and Doe Home Depot Officers)**

263.    Plaintiffs repeat and re-allege the foregoing paragraphs as if fully set forth herein.

264.    Count VIII is alleged against Defendants Martinez, Alvarez, Pater, Gaytan, Rojas, Reid, Dominiak, Soria, Doe CPD Officers, and Doe Home Depot Officers.

265.    Plaintiffs are Latino day laborers of Venezuelan or Columbian national origin and thereby members of a protected class.

266.    These Defendants, with discriminatory motive and intent, and racial animus toward each and every Plaintiff individually and as a group, because of their race and/or ethnicity, individually, and/or jointly, and in conspiracy, interfered with Plaintiffs' protected activity to make and/or enforce contracts as day laborers and to the right to full and equal benefit of laws.

267.    As a direct and proximate result of the misconduct described in this Count, Plaintiffs suffered physical and emotional injuries and damages as set forth above.

**COUNT IX – 42 U.S.C. § 1983**

**Unlawful Policy and Practice**
**(All Plaintiffs Against Defendant City of Chicago)**

268.     Plaintiffs repeat and re-allege the foregoing paragraphs as if fully set forth herein.

269.     Count IX is alleged against City of Chicago.

270.     The Defendant CPD Officers acted under the color of law, and under the authority of, and pursuant to, one or more interrelated de facto policies, practices, and/or customs of the Chicago Police Department, to violate Plaintiffs' rights as set forth in the preceding claims.

271.     The City of Chicago through its Police Department, Police Superintendent, Police Board, Mayor, and City Council maintained, at all times relevant to this complaint, interrelated de facto policies, practices, and customs which included, *inter alia*:

> a.   A pattern and practice of the unreasonable use of excessive and deadly force, including, but not limited to, by officers engaged in secondary employment or while acting while "off duty";
>
> b.   A pattern and practice of the unreasonable detainment, arrests, imprisonments and prosecutions, including but not limited to, by officers engaged in secondary employment or while acting "off duty";
>
> c.   Maintaining grossly inadequate policies and practices concerning secondary employment and "off duty" officers;
>
> d.   The failure to properly train, discipline, supervise, monitor, and control CPD officers, including, but not limited to, officers working secondary employment or while "off-duty";
>
> e.   The police code of silence, including, but not limited to, officers working secondary employment or while "off-duty."

272.     The interrelated policies, practices, and customs alleged above, at all times relevant

37

this complaint, are or should be well-known within the CPD and to its policymakers.

273.   The CPD is aware of the harms suffered by Plaintiffs and others as a result of the interrelated policies, practices, and customs alleged above.

274.   The City has implemented, enforced, encouraged, and sanctioned CPD's policies, practices, and customs alleged above in violation of Plaintiffs' and others Fourth and Fourteenth Amendment rights.

275.   The City and its police policymakers have acted with deliberate indifference to the Fourth and Fourteenth Amendment rights of Plaintiffs. As a direct and proximate result of the acts and omissions of the City the CPD, and its policymakers, the Fourth and Fourteenth Amendment rights of Plaintiffs have been violated.

276.   The policies, practices, procedures, and customs of the CPD were the direct and proximate cause (i.e., a moving force) of the violations of Plaintiffs' constitutional rights and the damages they suffered as set forth more fully above.

**COUNT X – Illinois State Law Claim**
**Assault and Battery**
**(All Plaintiffs Against Defendants Martinez, Alvarez, Gaytan, Pater, Rojas, and Reid)**

277.   Plaintiffs repeat and re-allege the foregoing paragraphs as if fully set forth herein.

278.   Count X is alleged against Defendants Martinez, Alvarez, Gaytan, Pater, Rojas, and Reid.

279.   As described in detail above, the Defendant CPD Officers physically abused Plaintiffs.

280.   The actions of the Defendant CPD Officers were affirmative acts and threatened to cause or did cause an unpermitted contact of a harmful and/or offensive nature, to which Plaintiffs did not consent, and thus constitute assault and battery under the laws of the State of Illinois.

281.    The actions of the Defendant Officers were committed in a willful and wanton manner.

282.    As a direct and proximate result of the misconduct described in this Count, Plaintiffs suffered physical and emotional injuries and damages as set forth above.

### COUNT XI – Illinois State Law Claim
### Intentional Infliction of Emotional Distress
### (All Plaintiffs Against Defendants Martinez, Alvarez, Gaytan, Pater, Rojas, and Reid)

283.    Plaintiffs repeat and re-allege the foregoing paragraphs as if fully set forth herein.

284.    Count XI is alleged against Defendants Martinez, Alvarez, Gaytan, Pater, Rojas, and Reid.

285.    The acts and conduct of the individual Defendants were extreme and outrageous, were rooted in an abuse of power and authority, were undertaken with an intent to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiffs, as alleged more fully above. The Defendant Officers' actions were also willful and wanton.

286.    As a direct and proximate result of the misconduct described in this Count, Plaintiffs suffered physical and emotional injuries and damages as set forth above.

### COUNT XII – Illinois State Law Claim
### False Arrest
### (All Plaintiffs Against Defendants Martinez, Alvarez, Pater, Gaytan, Rojas, Reid,
### Dominiak, Doe CPD Officers, and Doe Home Depot Officers)

287.    Plaintiffs repeat and re-allege the foregoing paragraphs as if fully set forth herein.

288.    Count XII is alleged against Defendants Martinez, Alvarez, Pater, Gaytan, Rojas, Reid, Dominiak, Doe CPD Officers, and Doe Home Depot Officers.

289.    As a direct and proximate result of the misconduct described in this Count,

Plaintiffs suffered physical and emotional injuries and damages as set forth above.

**COUNT XIII – Illinois State Law Claim**
**Malicious Prosecution**
**(Plaintiffs Gomez, Montano, Camacho and Gimenez Against  Defendants Martinez, Alvarez, Pater, Gaytan, Rojas, Reid, Dominiak, Doe CPD Officers, and Doe Home Depot Officers)**

290.    Plaintiffs repeat and re-allege the foregoing paragraphs as if fully set forth herein.

291.    Count XIII is alleged against Defendants Martinez, Alvarez, Pater, Gaytan, Rojas, Reid, Dominiak, Doe CPD Officers, and Doe Home Depot Officers.

292.    The individual Defendants individually, jointly and in conspiracy, initiated and continued false criminal charges against Plaintiffs without probable cause to believe that they had committed a crime, and they made statements to prosecutors with the intent of exerting influence and to institute and/or continue judicial proceedings.

293.    These Defendants, individually, jointly and in conspiracy, caused Plaintiffs to be improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

294.    These Defendants' actions were intentional, malicious, willful, and wanton and exhibited a deliberate indifference to, or reckless disregard for, Plaintiffs rights and safety.

295.    The charges against Plaintiffs were terminated in their favor.

296.    As a direct and proximate result of the misconduct described in this Count, Plaintiffs suffered physical and emotional injuries and damages as set forth above.

**COUNT XIV – Illinois State Law Claim**
**Conspiracy**
**(All Plaintiffs Against  Defendants Martinez, Alvarez, Pater, Gaytan, Rojas, Reid, Dominiak, Soria, Doe CPD Officers, and Doe Home Depot Officers)**

297.    Plaintiffs repeat and re-allege the foregoing paragraphs as if fully set forth herein.

298.    Count XIV is alleged against Defendants Martinez, Alvarez, Pater, Gaytan, Rojas,

Reid, Dominiak, Soria, Doe CPD Officers, and Doe Home Depot Officers.

299.     As described more fully in the preceding paragraphs, the individual Defendants, acting in concert with other known and unknown coconspirators, conspired by concerted action to assault and battery, falsely arrest, imprison and maliciously prosecute and continue said prosecutions, and/or to intentionally inflict severe emotional distress on Plaintiffs.

300.     In furtherance of the conspiracy, these Defendants committed overt acts set forth above.

301.     The misconduct described in this Court was undertaken intentionally, with malice, willfulness and reckless indifference to the rights of others. These Defendants' actions were also willful and wanton.

302.     As a direct and proximate result of the misconduct described in this Count, Plaintiffs suffered physical and emotional injuries and damages as set forth above.

### COUNT XV – Illinois State Law Claim
### Gross Negligence
### (All Plaintiffs Against Defendants Home Depot, Rojas, Reid, Pater, Gaytan, Dominiak, Soria, Doe CPD Officers and Defendant Home Depot John Does)

303.     Plaintiffs repeat and re-allege the foregoing paragraphs as if fully set forth herein.

304.     Count XV is alleged against Home Depot, Rojas, Reid, Pater, Gaytan, Dominiak, Soria, and Home Depot John Does.

305.     At all relevant times, the Defendant CPD Officers Martinez, Alvarez, and Doe CPD Officers were acting within the scope of their employment and/or agency as employees and/or agents of Defendants Home Depot.

306.     At all relevant times, Defendants Rojas, Reid, Pater, Gaytan, Dominiak, Soria, and Home Depot John Does were acting within the scope of their employment and/or agency as employees and/or agents of Defendants Home Depot.

307.    Defendant Home Depot is vicariously liable for the individual actions of their agents and employees.

308.    In addition, Defendant Home Depot had a duty to exercise reasonable case in hiring, training, maintaining and supervising law enforcement and/or security guards and/or security companies to provide security related services to Home Depot.

309.    At all relevant times, Defendants Home Depot had a duty to ensure any security officers and/or security guards and/or security companies provide unbiased, police, security and public services, and act in accordance with the constitutional rights of all members of the public with whom they interact.

310.    At all relevant times, Defendant Home Depot acted in contravention of their duty of care to Plaintiffs, and/or pursuant to their policies and practices, by negligently, carelessly, and recklessly failing to properly train, supervise, control, discipline, direct, counsel, hire, source and monitor the security officers while carrying out their duties and responsibilities at Home Depot as set forth herein.

311.    Defendant Home Depot by and through their management and policymakers, were deliberately indifferent to the rights of Plaintiffs when Defendant established and maintained their policies and practices and hired their security officers, security guards, and/or security companies that provide services to Home Depot.

312.    Defendant Home Depot knew or should have known, based on complaints, wrongful arrests, stops, seizures, detainment, arrests, prosecutions, and assaults of day laborers by the individual Defendants, that there was a dangerous condition on the premises that they failed to remedy, guard against or warn Plaintiffs about.

313.    Defendant Home Depot had the following duties to Plaintiffs:

a. To avoid assault, battery, wrongful detention, arrest, prosecution, and imprisonment, , and/or other harm or injury to day laborers at or near Home Depot.

b. To intervene to stop any assault, battery, use of excessive or unwarranted force, wrongful detention, arrest or seizure of day laborers at or near Home Depot.

c. To avoid putting day laborers in harm's way by ensuring all security officers providing security services at Home Depot are without racial biases or known history of racial profiling, excessive or unwarranted use of force, discrimination, assault and/or false arrest of day laborers.

d. To ensure that security officers providing security services for Home Depot are properly vetted, trained and supervised to ensure the safety and protection of day laborers at or near Home Depot.

e. To immediately deescalate any potential confrontations with day laborers at or near Home Depot in order to avoid using any force against day laborers.

f. To take appropriate measures to ensure that the constitutional rights of day laborers at or near Home Depot are not violated on their property.

g. To ensure their premises is free of racial bias, harassment and discrimination.

h. To ensure their workplace rules are enforced in a civil and professional manner.

i. To ensure that security officers and/or employees and/or contractors that use unreasonable and/or excessive force or violence against day laborers are prohibited from their premises.

j. To ensure that any security company and/or agency working in Home Depot does so in a manner that does not violate the constitutional rights of the

Plaintiffs.

314.    Defendant Home Depot acted in contravention of these duties of care to Plaintiffs by negligently, carelessly, and recklessly failing to properly train, supervise, control, direct, hire, monitor and discipline their security personnel and/or security agencies that provide security related services to Home Depot.

315.    As a direct and proximate result of the misconduct described in this Count, Plaintiffs suffered physical and emotional injuries and damages as set forth above.

**COUNT XVI – Illinois State Law Claim**
**Respondeat Superior**
**(All Plaintiffs Against Defendant City of Chicago)**

316.    Plaintiffs repeat and re-allege the foregoing paragraphs as if fully set forth herein.

317.    Count XV is alleged against Defendant City of Chicago.

318.    In committing the acts alleged in the preceding paragraphs, each of the CPD Defendants was an employee and agent of the Chicago Police Department and the City of Chicago, acting at all relevant times within the scope of his employment and under color of law.

319.    Defendant City of Chicago is liable for all state law torts committed by the CPD Defendant Officers as alleged herein under the doctrine of respondeat superior.

**COUNT XVII – Illinois State Law Claim**
**Respondeat Superior**
**(All Plaintiffs Against Defendant Home Depot)**

320.    Plaintiffs repeat and re-allege the foregoing paragraphs as if fully set forth herein.

321.    Count XVI is alleged against Defendant Home Depot.

322.    In committing the acts alleged in the preceding paragraphs, each of the individual Defendants was an employee and agent of Home Depot, acting at all relevant times within the scope of his employment.

323.     Defendant Home Depot is liable for all state law torts committed by the Defendant Officers as alleged herein under the doctrine of respondeat superior.

### COUNT XVIII – Illinois State Law Claim
### Indemnification
### (All Plaintiffs Against Defendant City of Chicago)

324.     Plaintiffs repeat and re-allege the foregoing paragraphs as if fully set forth herein.

325.     Count XVII is alleged against Defendant City of Chicago.

326.     In Illinois, pursuant to 735 ILCS 10/9-102, public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

327.     The Defendant CPD Officers acted within the scope of their employment in committing the misconduct described herein. Therefore, Defendant City of Chicago is liable as their employer for any resulting damages or award of attorney's fees.

### REQUEST FOR RELIEF

WHEREFORE, Individual Plaintiffs request that this Court enter judgment in their favor against the Defendants by awarding Individual Plaintiffs significant compensatory and punitive damages against the Individual Defendants and Home Depot, and compensatory damages against the City of Chicago.

In addition, Individual Plaintiffs and Organizational Plaintiff Latino Union requests that this Court:

a. Issue an order declaring that Plaintiffs' rights have been violated as alleged above and that the practices complained of herein are unlawful and violative of the acts cited;

b. Issue an order granting the following injunctive relief:

i. Enjoining the City of Chicago from its policy, practice, and/or custom of unreasonable use of excessive and force, including but not limited to by officers engaged in secondary employment or while acting while "off duty";

ii. Enjoining the City of Chicago from its policy, practice, and/or custom of unreasonable detainment, arrests, imprisonments and prosecutions, including but not limited to by officers engaged in secondary employment or while acting "off duty";

iii. Enjoining the City of Chicago from its policy, practice, and/or custom of maintaining grossly inadequate policies and practices concerning secondary employment and "off duty" officers;

iv. Enjoining the City of Chicago from its policy, practice, and/or custom of failing to properly train, discipline, supervise, monitor, and control CPD officers, including, but not limited to, officers working secondary employment or while "off-duty";

v. Enjoining the City of Chicago from its policy, practice, and/or custom of maintaining the police code of silence, including, but not limited to officers working secondary employment or while "off-duty."

vi. Enjoining all Defendants from engaging in each of the unlawful practices, policies, customs, and usages set forth herein, and from continuing any and all other practices shown to be in violation of applicable law.

2. Award Plaintiffs reasonable attorneys' fees, costs, and expenses pursuant to 42

U.S.C. § 1988.

      3.     Award Plaintiffs such other and further relief as this Court may deem appropriate

and just.

## JURY DEMAND

      Plaintiffs demand trial by jury.


Dated: April 18, 2025               Respectfully submitted,


                                  By: /s/ Kevin L. Herrera
                                  Kevin L. Herrera (ARDC # 6324045)
                                  Jamitra L. Fulleord
                                  Mark H. Birhanu
                                  RAISE THE FLOOR ALLIANCE
                                  1 N. LaSalle St. Ste 1275
                                  Chicago, Illinois 60602

Ben H. Elson
G. Flint Taylor
Tayleece Paul
PEOPLE'S LAW OFFICE
1180 N. Milwaukee Ave.
Chicago, IL 66042

Chris Williams
WORKER'S LAW OFFICE
2729 N. Magnolia Ave.
Chicago IL 60614

Counsel for the Plaintiffs