UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALFONZO GABRIEL ARIAS, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | No. 1:24-cv-06859 |
| | ) | |
| v. | ) | Hon. Joan H. Lefkow |
| | ) | |
| CITY OF CHICAGO, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANT CITY OF CHICAGO'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

## INTRODUCTION

The Defendant City has moved to dismiss Plaintiffs' *Monell* pattern and practice and injunctive claims alleged against it. For the reasons set forth below, the City's motion must be denied in its entirety.

## LEGAL STANDARD

Plaintiffs incorporate as if fully stated herein the legal standard from their brief in opposition to Defendant Home Depot's motion to dismiss.

## FACTUAL ALLEGATIONS

Plaintiffs have alleged that the City of Chicago through its Police Department, Police Superintendent, Police Board, Mayor, and City Council maintained, at all times relevant to the complaint, interrelated *de facto* policies, practices, and customs which included, *inter alia*:

    a. the unreasonable use of excessive and deadly force, including, but not limited to, by officers engaged in secondary employment or while acting while "off duty";

    b. the unreasonable detainment, arrests, imprisonments and prosecutions, including but not limited to, by officers engaged in secondary employment or while "off duty";

    c. Maintaining grossly inadequate policies and practices concerning secondary

1

        employment and "off duty" officers;

    d. The failure to properly train, discipline, supervise, monitor, and control CPD officers, including, but not limited to, officers working secondary employment or while "off-duty";

    e. The police code of silence, including, but not limited to, officers working secondary employment or while "off-duty."

Am. Compl. at ¶ 271.

In support, Plaintiffs allege that these patterns and practices are evidenced, *inter alia*, by the numerous incidents of excessive force and false arrests occurring over several months in 2023 and 2024 at Home Depot as alleged in the complaint against CPD officers working secondary employment; settlements of at least 32 lawsuits against off-duty Chicago police officers from 2006 to 2021 totaling more than $10 million; 11 complaints of excessive force and unnecessary display of a weapon filed against CPD officers working secondary employment; and the facts concerning off-duty police misconduct directed against day laborers at the same Western Avenue Home Depot as alleged in *Chicago Day Laborer Committee, et al., v. City of Chicago, et al.*, No. 18-cv-3425 (N.D. Ill.). Am. Compl. at ¶¶ 56-205, 209-214. Plaintiffs further allege that CPD failed to properly discipline the officers named in these incidents, including the Defendant Officers. *Id.* at ¶ 215.

Additionally, Plaintiffs allege that the CPD has maintained grossly inadequate policies, practices and customs concerning secondary employment of off-duty officers as evidenced by: (1) the absence of a policy that requires officers to report and get approval for engaging in secondary employment, including police-related secondary employment; (2) CPD's failure to tag or categorize whether excessive force complaints involve secondary employment; (3) CPD's banning of disclosure of secondary jobs; (4) CPD's failure to monitor where or when its officers work secondary employment; (5) CPD officers' exemption from state licensing requirements which allows them to carry weapons and handcuffs; (6) CPD officers regularly violating CPD's ban on

officers working security in bars and other liquor establishments without consequence; (7) the absence of a policy that requires CPD officers to report in to the Department when beginning or ending their working secondary employment shifts; (8) the absence of a policy limiting how many hours an officer can work at their secondary employment after working an on-duty shift; (9) allowing the officer, rather than the Department, to organize the secondary employment, controlling where, when and for whom its officers moonlight. *Id.* at ¶ 216.

Plaintiffs allege that these unconstitutional policies, practices and customs are further evidenced by: (1) 2017 U.S. Department of Justice findings "that a significant amount of alleged officer misconduct involves officers working secondary employment … indicat[ing] that there is a need for a thorough review of the policies and accountability measures related to officers' secondary employment;" (2) the recommendations of the City's Officer of the Inspector General in 2017 that CPD adopt a more rigorous secondary employment policy to avoid the potential for officer burnout, corruption, and legal exposure; (3) former Mayor and City policymaker Lori Lightfoot's acknowledgement in 2021 of the gross inadequacies of the CPD's secondary employment policies and practices, and the need to reform them, and (4) the City's failure, despite years of notice, to take any meaningful steps to remedy these inadequacies. *Id.* at ¶¶ 217-219.

Plaintiffs have alleged that Venezuelan and non-Venezuelan day laborers sought and continue to seek work near and on the premises of Home Depot Store #1986, *id.* at ¶¶ 38–39, and that Defendants are aware of this continued presence of day laborers near Home Depot Store #1986 and continue to place special emphasis on this population. *Id.* at ¶ 40. Plaintiffs further plead that at least one Plaintiff, Mr. Arias, fears continued abuse at the hands of Defendants. *Id.* at ¶ 84. Plaintiff Latino Union alleged continued injury, namely in its frustration of mission through

3

ongoing diversion of staff time and monetary resources to address the impacts of the lawsuit. *Id.* at ¶¶ 220–230.

Founded in 2000, Plaintiff Latino Union is a non-for-profit organization whose mission is to build power with day laborers and other contracted workers to fight for social and economic justice. *Id.* at ¶ 19. Latino Union has diverted significant resources to remedying Defendant's unlawful conduct, which has harmed both Latino Union directly and members Betuel Camacho, Willian Alberto Gimenez Gonzalez, Luis Gomez, and Juan Carlos Montano. *Id.* at ¶¶ 222-228. This diversion of resources — including creating a new staff position, increasing worker outreach near Home Depot Store #1986, and helping workers navigate criminal proceedings — comes at the expense of other projects central to Latino Union's mission. *Id.* Importantly, Defendant's alleged constitutional violations have impeded Latino Union from carrying out the worker outreach and education functions that constitute its core business activities. *Id.* at ¶ 226. By removing day laborers to areas beyond the reach of Latino Union organizers, and creating an atmosphere of fear and intimidation among day laborers, Defendant has prevented Latino Union organizers from reaching day laborers with information about their rights. *Id.* To redress the harm caused both to Latino Union directly and its members, Latino Union joins the Individual Plaintiffs in seeking injunctive and declaratory relief. *Id.* at ¶ 9.

## ARGUMENT

### I. Plaintiffs Have Sufficiently Pled a *Monell* Claim

In the face of these well pleaded allegations, the City nonetheless argues that Plaintiffs' *Monell* claim should be dismissed because Plaintiffs have failed to allege an action pursuant to municipal policy, deliberate indifference and causation. None of these arguments have merit.

"To establish municipal liability, a plaintiff must show that an unconstitutional custom, policy, or practice caused the injury and may do so by showing one of three conditions: (1) an express, unconstitutional municipal policy; (2) a widespread practice, that although unauthorized, is so permanent and well-settled, that it constitutes a custom or usage with the force of law; or (3) that a final policy-maker caused the injury." *Wade v. Rizzuto,* 14 C 3825, 2016 WL 1247472, at *5 (N.D. Ill. Mar. 30, 2016). Plaintiffs may show a widespread practice by alleging "a series of violations to lay the premise of deliberate indifference." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). In "widespread practice" implicit policy cases, "what is needed is evidence that there is a true municipal policy at issue, not a random event. If the same problem has arisen many times and the municipality has acquiesced in the outcome, a court can "infer that there is a policy at work, not [an] isolated incident." *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005).

As this Court has repeatedly recognized, Plaintiffs are not held to a heightened standard in pleading a *Monell* claim. *See Wade*, 2016 WL 1247472, at *5-6 (citing *McCormick v. City of Chicago*, 230 F.3d 319, 323 (7th Cir. 2000)); *Jacoby v. DuPage Cty. Ill.*, No. 12 CV 6539, 2013 WL 3233339, at *2 (N.D. Ill. June 26, 2013); *Hunt v. Hardy*, No. 11 C 4396, 2012 WL 2458943, at *6 (N.D. Ill. June 27, 2012). "Even after *Twombly* and *Iqbal*, an official capacity claim can survive even with conclusory allegations that a policy or practice existed, so long as facts are pled that put the defendants on proper notice of the alleged wrongdoing." *Wade*, 2016 WL 1247472, at *6. "At the pleading stage" of a widespread custom case, a plaintiff need only "allege facts that permit the reasonable inference" that the practice amounts to a custom. *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017).

The facts alleged by the Plaintiffs are more than sufficient to permit the reasonable inferences necessary for deliberate indifference, causation, and that the practices amount to a custom that also puts the City on proper notice of the alleged wrongdoing, *See, e.g., Taylor v. Norway*, No. 20-cv-7001, 2021 WL 4133549, at *4-6 (N.D. Ill. Sep. 10, 2021) (finding that allegations less detailed than those in the present case regarding the existence of a widespread custom, deliberate indifference and causation were sufficient to withstand dismissal); *Baskins v. Gilmore*, No 17 C 07566, 2018 WL 4699847, at *4-6 (N.D. Ill. Sept. 30, 2018) (finding that, at the motion-to-dismiss stage, the plaintiff "adequately plead that the City knew about the code of silence and that the code emboldened officers to engage in misconduct and cover it up, so the City could be deemed the 'moving force' behind the violations"); *Peterson v. City of Chicago*, Case No. 14-cv-9881, 2015 WL 13882814, at *5-6 (N.D. Ill. June 23, 2015) (finding that "one could reasonably infer" causation based on allegations that a failure to discipline and code of silence "lead[] officers to perpetrate the kinds of constitutional deprivations Plaintiff allegedly suffered"). Moreover, unlike in many *Monell* cases, the Plaintiffs have also plausibly alleged actual notice to the policymakers of the gross inadequacies of the relevant secondary employment policies and practices.

Almost laughably, the City relies on *Adickes v. Kress*, 398 U.S. 144 (1970) to define a sufficient pattern and practice—segregation in the south over many decades. Dkt. 79 at 9. But see *Thomas v. Cook Cnty. Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010):

> We do not adopt any bright-line rules defining a "widespread custom or practice." As we stated in *Cosby v. Ward*, there is no clear consensus as to how frequently such conduct must occur to impose Monell liability, except that it must be more than once instance, 843 F.2d 967, 983 (7th Cir. 1988)….

6

The allegations in the Amended Complaint of the five incidents involving the Plaintiffs and the scores of additional settlements and lawsuits are more than sufficient to satisfy the widespread practice element at this stage of the proceedings.

The City's argument that COPA sustained findings from 2023 and the independent monitor's reports on "the updated training and use of force policies the City has strived to improve and complete" somehow defeats Plaintiffs' *Monell* clam is unavailing. Dkt. 79 at 12. The crux of this argument is that because the City entered into a Consent Decree, it cannot be deliberately indifferent on the facts. In making that argument, the City both introduces new facts that are not included in the complaint and draws inferences in its favor, neither of which is permissible in a motion to dismiss. It is well-established that, when moving to dismiss a complaint, a defendant cannot "attempt to refute the complaint or to present a different set of allegations. The attack is on the sufficiency of the complaint, and the defendant cannot set or alter the terms of the dispute, but must demonstrate that the plaintiff's claim, as set forth by the complaint, is without legal consequence." *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987); *Kohlman v. Vill. of Midlothian*, No. 08 C 5300, 2009 WL 1381339, at *1 n. 3 (N.D. Ill. May 15, 2009) (disregarding defendants' "clearly improper" attempt to present their own version of the facts); *Smith v. Burge*, 222 F. Supp. 3d 669, 691 (N.D. Ill. 2016) (denying motion to dismiss where defendants attempted to rebut plaintiff's allegations with their own version of the facts); *Cosby v. Rodriguez*, No. 23 C 2236, 2024 WL 167711, at *20 (N.D. Ill. Jan. 16, 2024) (denying motion to dismiss *Monell* claim and noting that the City's argument about the time and money it has invested

in Consent Decree compliance improperly went "beyond the four corners of Plaintiff's complaint").[1]

Moreover, it is truly ironic that the City attempts to hide behind the Federal Consent Decree which in fact was set in place in an attempt by the Department of Justice to remedy, *inter alia*, the very policies and practices alleged by Plaintiffs. Not only have City officials, including then Mayor Lightfoot, admitted that the CPD had not sufficiently remedied the CPD's systemic failures regarding secondary employment (*see* Am. Compl. at ¶¶ 217-219), but, even more recently, the Decree's Monitoring Team found that the CPD had fully met just 9% of the Decree's requirements in the more than five years since it took effect, a finding that former Chief District Judge Rebecca Pallmeyer, after a hearing on compliance, found to be "unsatisfying."[2] The City's argument about its purported reforms may belong in a motion for summary judgment, but it does not belong here. *See Treadwell v. Salgado*, 2021 WL 3129290, at *6 (N.D. Ill. July 23, 2021) (rejecting argument that City's reforms defeated plaintiff's *Monell* claim as inappropriate at the motion to dismiss stage); *Taylor v. Norway*, 2021 WL 4133549, at *5 (N.D. Ill. Sep. 10, 2021) ("The Court cannot say that the mere establishment of COPA and the OIG Public Safety Deputy establishes that Defendant was not deliberately indifferent as a matter of law.")

---

[1] In seeking dismissal of Plaintiffs' *Monell* claim based on the existence of the Consent Decree, the City urges this Court to contravene voluminous precedent allowing *Monell* claims to proceed during the pendency of a consent decree. *See, e.g., Fix v. City of Chicago*, 2022 WL 93503, at *2–4 (N.D. Ill. Jan. 10, 2022) (denying motion to dismiss *Monell* claim in lawsuit based on CPD's actions during 2020 protests); *Hendrick v. Bryant*, 2021 WL 4502159, at *4 (N.D. Ill. Sept. 30, 2021) (denying motion to dismiss *Monell* claim against City of Chicago in lawsuit based on 2019 excessive force incident that occurred after City was subject to Consent Decree); *Howard v. Sheriff of Cook Cnty.*, 2016 WL 4366598 (N.D. Ill. Aug. 16, 2016) (denying motion to dismiss *Monell* claim while Cook County Jail consent decree was in effect). This Court should rule in accordance with existing case law and reject the City's argument.

[2] *See* https://news.wttw.com/2024/12/10/chicago-s-compliance-consent-decree-unsatisfying-federal-judge.

The City's reliance on its collective bargaining agreement with Chicago police labor unions fails for the same reasons. Dkt. 79 at 7-8. Plaintiffs' complaint contains no allegations regarding the collective bargaining agreement or the consent decree between the State of Illinois and the City. The City's attempt to insert these facts in a motion to dismiss must be rejected. Furthermore, the City's argument is so perfunctory and undeveloped that it is impossible to understand. The City states that the consent decree "expressly addresses that public employees have rights under the ILPRA and that the consent decree does not usurp or trump collective bargaining agreements" but fails to explain how this "fact" has any impact on Plaintiffs' *Monell* claim. Dkt. 79 at 8. For decades, the City has negotiated the terms of its collective bargaining agreement with the Fraternal Order of Police, and the City fails to cite any instance in which it has ever been held to be a bar to well pleaded allegations and proof on *Monell* policy and practice claims.

Next, the City asserts that Plaintiffs' *Monell* claim should be dismissed because the City cannot be held liable for the "private and unrelated actions of its employees and agents" and that Plaintiffs cannot establish causation because the complaint "simply alleges . . . issues between private citizens." Dkt. 79 at 7, 12. These arguments fail because they require the Court to view the facts in the light most favorable to the City and draw inferences in its favor, which is improper at the motion to dismiss stage. Plaintiffs' complaint contains allegations that are sufficient to raise the reasonable inference that the named and unnamed Defendant CPD Officers were acting under color of law and within the scope of their employment, including that they wore vests with the word "Police" on them, identified themselves as police, threatened the Plaintiffs with their police powers, and acted jointly with on-duty officers in effecting the wrongful arrests of the Plaintiffs. *See* Am. Compl. at ¶¶ 22, 24, 60, 62-64, 69, 76, 163, 187. The City's insistence that the Defendant Officers were behaving in a purely personal capacity cannot be credited at this stage because it

directly contradicts the allegations in the complaint. *Cf. Pickrel v. City of Springfield*, 45 F.3d 1115, 1118 (7th Cir. 1995) (holding an off-duty police officer dressed in his police uniform, complete with a badge and a gun, working as a security guard in a restaurant could have been acting under color of state law sufficient to find federal question jurisdiction when he arrested the plaintiff for refusing to leave); *Parkes v. Wynne*, Case No. 20-12650, 2024 WL 4373757, at *2-3 (E.D. Mich. Sept. 30, 2024) (declining to grant summary judgment in favor of an off-duty police officer who allegedly violated the Fourth Amendment when he fatally shot the plaintiffs' dog); *McGlenn v. Madison Metro. Sch. Dist.*, 21-cv-683-jdp, 2024 WL 316981, at *6-7 (W.D. Wis. June 25, 2024) (observing that the defendant cited "no Supreme Court or Seventh Circuit cases holding or implying that a public employee cannot act under color of law if his conduct is unauthorized or if he is motivated by personal interests.")

Finally, the City asserts that Plaintiffs have failed to adequately plead factual allegations in support of their failure to train theory. Dkt. 79 at 10-11. This argument must also be rejected because all of the facts alleged concerning the pattern of specific misconduct in this and prior secondary employment cases, the admissions by a City policy maker, the findings of the DOJ and the City's Inspector General, and the gross inadequacies of the City's secondary employment policies together give rise to a powerful inference that the CPD does not adequately train its officers concerning their specific and relevant conduct while working secondary employment as law enforcement officers. Consequently, Plaintiffs' allegations meet the standard set forth in *City of Canton v. Harris*, 489 U.S. 378, 389, 390 (1989) — "a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants" and "can be properly thought of as a city 'policy or custom' that is actionable under

10

§ 1983" — and can provide a sufficient basis for Plaintiffs to further explore the training question during discovery.

For all of the above reasons, the City's motion to dismiss Plaintiffs' *Monell* claim should be denied.

II. **Plaintiffs have Sufficiently Pled a Request for Injunctive Relief**

Defendant asserts Plaintiffs' claim for injunctive relief fails on two bases: Plaintiffs do not have standing and that their claim is overly broad to the point it is unworkable and against public policy. Dkt. 79 at 13-14. Plaintiffs sufficiently plead their request for injunctive relief as they have standing on the basis of ongoing injuries and their request is not overly broad, unworkable, or against public policy.

A. **Plaintiffs have pled that they have standing to seek injunctive relief.**

"When the Plaintiff applies for prospective relief against a harm not yet suffered — or one he believes he will suffer again — he must establish that he 'is immediately in danger of sustaining some direct injury as the result of the challenged official conduct[,] and [that] the injury or threat of injury [is] both real and immediate, not conjectural or hypothetical." *Bell v. Keating*, 697 F.3d 445, 451 (7th Cir. 2012) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). "In order for Plaintiffs to allege a controversy regarding the City's prospective conduct, they must plausibly claim that they themselves are likely to be repeat victims of the unconstitutional practices in the imminent future." *Polk v. Dent*, No. 13 CV 9321. 2015 WL 2384601, at *8 (N.D. Ill. May 19, 2015). "More specifically, Plaintiffs would have to allege, at a minimum, that they face a real and immediate threat of being stopped by the police *again* and subjected to excessive force and/or an unlawful search." *Id.* (emphasis in original).

11

The Individual Plaintiffs adequately allege that the injuries they have suffered will continue without injunctive relief. First, "Plaintiffs seek declaratory and injunctive relief so that Individual Plaintiffs may seek work pursuant to their needs without threat of arrest and further retaliatory action." Am. Compl. at ¶ 9. Plaintiff Arias "continues to suffer emotional distress and fear of continued abuse from the Defendants and other officers if he were to seek work near Home Depot Store #1986." *Id.* at ¶ 84. Furthermore, the Individual Plaintiffs allege that they are Venezuelan and Colombian day laborers, *id.* at ¶ 254, and that Defendants have placed "excessive attention on harassing, moving, and detaining day laborers perceived to be Venezuelan" near Home Depot Store #1986. *Id.* at ¶ 42.

Plaintiff Latino Union has continued to witness Defendants' misconduct at Home Depot Store #1986 through its "new Day Laborer Outreach Specialist position" and continued "outreach with day laborers near Home Depot Store # 1986." *Id.* at ¶ 224.b. Further, Plaintiff Latino Union is experiencing ongoing harm as it monitors and must be ready to respond to complaints where police officers working secondary employment for Home Depot Store #1986 may continue unabated. *Id.* at ¶ 226.a. ("Defendants' unlawful conduct has forced [Latino Union's Day Labor Organizer] to visit Home Depot Store # 1986 about every one or two weeks, forcing him to abandon planned visits to other street corners.") Plaintiff Latino Union also alleges direct threats of future harm where "Defendants have threatened Latino Union organizers who are in the vicinity of Home Depot Store #1986 with arrest, interfering with their ability to provide day labor trainings and information about their rights." *Id.* at ¶ 227.c.

      **B.**    **Plaintiffs' injunctive relief is not overly broad, unworkable, or against public policy.**

Defendants claim Plaintiffs' request for injunctive relief fails to list specific policies. On the contrary, Plaintiffs plead a list of inadequate policies, practices, and customs related to CPD

secondary employment which caused the abuses of Plaintiffs, including: failure to require officers to report and get approval for engaging in secondary employment; failure to categorize if excessive force complaints involved secondary employment; bans on disclosure of secondary jobs; failure to monitor when or where officers work secondary employment; exemption from state licensing requirements regarding carrying weapons and handcuffs; failure to uphold the ban on officers working secondary employment in bars and other liquor establishments; failure to require officers to report their secondary employment shifts; failure to limit how many hours an officer can work secondary employment; and failure to have departmental oversight over secondary employment conditions. *Id.* at ¶ 216.a-i. These policies are discrete and any or each of them could be resolved with intervention of this Court. *See Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017) ("The critical question under *Monell* . . . is whether a municipal (or corporate) policy or custom gave rise to the harm[.]") (citations omitted). Defendants' bald assertions regarding whether these policies are "unworkable" would effectively prohibit judicial intervention in any case of ongoing civil rights abuses by municipal employees.

## CONCLUSION

For the foregoing reasons, Defendant City's motion to dismiss should be denied.

Dated: June 30, 2025  Respectfully submitted,

By: /s/ Kevin L. Herrera
Kevin L. Herrera (ARDC # 6324045)
Jamitra L. Fulleord
Mark H. Birhanu
RAISE THE FLOOR ALLIANCE
1 N. LaSalle St. Ste 1275
Chicago, Illinois 60602

Ben H. Elson

13

G. Flint Taylor
Tayleece Paul
PEOPLE'S LAW OFFICE
1180 N. Milwaukee Ave.
Chicago, IL 66042

Chris Williams
WORKER'S LAW OFFICE
2729 N. Magnolia Ave.
Chicago IL 60614
Counsel for the Plaintiffs

14