IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ALFONZO GABRIEL ARIAS, et al.,     )
         )
     Plaintiffs,     )
         )  Case No. 24 C 6859
     v.     )
         )  Judge Joan H. Lefkow
CITY OF CHICAGO, et al.,     )
         )
     Defendants.     )

## OPINION AND ORDER

Latino Union, Inc., and five migrant workers from South America bring this action

against the City of Chicago, several Chicago Police Department (CPD) officers, The Home

Depot U.S.A., Inc., and several of its employees, introducing eighteen counts of violations of 42

U.S.C. §§ 1981, 1983, 1985, 1986 and Illinois common law. In addition to several common law

tort claims, plaintiffs allege Fourth and Fourteenth Amendment violations arising from the

detention, battery, and arrest of the migrant workers while they were seeking day labor work

near a Home Depot retail store in Chicago, Illinois.[1] Before the court are the City's and Home

Depot defendants' motions (dkt. 78, dkt. 79) to partially dismiss plaintiff's operative first

amended complaint (dkt. 57). For the reasons stated below, the court grants in part and denies in

part the City's motion (dkt. 79) and grants in part and denies in part Home Depot defendants'

motion (dkt. 78).

---

[1] Jurisdiction is proper under 28 U.S.C. §§ 1343 and 1367. Venue is proper under 28 U.S.C. § 1391(b).

### BACKGROUND[2]

The five migrant workers ("individual plaintiffs") support themselves financially through the performance of day labor, *i.e.*, work paid a day at a time with no promise of future work. Plaintiffs[3] allege that, with the consent of the City, individual plaintiffs were unlawfully detained, assaulted, and battered by off-duty CPD officers moonlighting as security guards for Home Depot. The central events behind these claims follow.

By Fall 2023, Home Depot Store #1986, located at 4555 S. Western Boulevard, had experienced an uptick in the number of migrants from Venezuela and other South American countries seeking day labor at or around the store. In response, Home Depot took new steps, beginning in October 2023, to increase security presence at Store #1986 by hiring off-duty CPD officers.

On relevant dates between October 2023 and May 2024, an individual plaintiff arrived at Store #1986 with the intention of finding day labor. One individual plaintiff, Montano, had plans to meet a person with whom he had previously discussed such work. While waiting for work, each individual plaintiff stood at or around Store 1986's west entrance to its parking lot. At least

---

[2] Except as otherwise noted, the Background section is drawn from plaintiffs' first amended complaint. Plaintiffs' well-pleaded allegations are accepted as true. *Alarm Detection Sys., Inc.* v. *Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019) (citation omitted).

[3] Plaintiffs are Latino Union, Inc., a not-for-profit corporation dedicated to fighting for social and economic justice on behalf of day laborers, and five recent arrivals to the United States: Alfonzo Gabriel Arias, Betuel Castro Camacho, Willian Alberto Gimenez Gonzalez (Gimenez), Luis Adrian Gomez, and Juan Carlos Montano (together, the individual plaintiffs). Arias, Gimenez, Gomez, and Montano are all from Venezuela. Camacho is from Colombia.

Defendants are Home Depot U.S.A., Inc., a home improvement retail corporation, certain Home Depot employees, including Tim Pater, Shawn Gaytan, Alejandro Rojas, Donnie Reid, Matthew Dominiak, Valeria Soria, and Home Depot John Does (Home Depot Does); the City of Chicago; and certain CPD officers, including Angel Martinez, Raul Alvarez, and CPD Officer John Does (CPD Does). Martinez, Alvarez, Gaytan, and Pater were employees of both Home Depot and the City at all relevant times.

some defendants, including the Home Depot defendants, were aware that Venezuelan migrants regularly sought day labor work from this specific area.

While waiting for work, each individual plaintiff was approached by Home Depot security staff, which included off-duty CPD officers. Arias was approached by Gaytan and two unknown CDP officers (CPD Does). Camacho was approached by Rojas and Pater. Gimenez was approached by Rojas, Martinez, and two CPD Does. Gomez was approached by Martinez and Alvarez. Montano was approached by Martinez, Pater, Gaytan, Reid, and a CPD Doe. The off-duty officers were usually wearing black police attire, including vests with the word 'POLICE' printed on the back. They were generally armed and carried handcuffs and, in at least one instance, an off-duty officer wore a full CPD uniform. In each case, after approaching the individual plaintiffs, the off-duty officers forcibly handcuffed them without explanation. Then, the off-duty officers pulled, dragged, or pushed each individual plaintiff into Store #1986, bringing them to a private room on the western side of the store where they were detained for some time.

There, personal belongings were taken from them, and they were battered. Arias was struck in the face, ribs, and stomach by Gaytan and another off-duty officer, who also choked him, while a third off-duty officer watched. These men told Arias they were police. Arias sustained a fractured wrist from the beating. Camacho was repeatedly struck by Rojas and Pater while Dominiak, a supervisor for security personnel at Home Depot, observed. Rojas repeatedly struck Gimenez while Martinez, the two CPD Does, and a Caucasian woman (a Home Depot Doe) observed. Another day laborer, who was also handcuffed in the room with Gimenez, was also struck repeatedly. Martinez hit Gomez multiple times with a closed fist as Alvarez was present. Pater, Reid, and a defendant officer stood guard by the door as Martinez beat Montano.

3

During these events, derogatory comments about Venezuelans and immigrants were repeatedly made. Gaytan told Arias while beating him that Home Depot "did not want immigrants here" and that Arias would be deported. (Dkt. 57 ¶ 76.) While beating Camacho, Rojas and Pater insisted that he is Venezuelan, although he is Colombian. During their respective beatings, Gimenez and Montano were referred to, in Spanish, as "Fucking Venezuelan[s]." (*Id.* ¶¶ 141, 197.)

In all but one instance, on-duty CPD officers eventually became involved. Montano and Gimenez were formally arrested by on-duty officers that arrived after they were beaten. On-duty officers also arrived at the scene for Camacho and Gomez. Additionally, Camacho, Gimenez, Gomez, and Montano were all charged with criminal trespass on the days of their respective detentions and batteries.

Rojas and Martinez completed the criminal complaint form for Gimenez; Rojas initiated a criminal complaint against Camacho; and Reid initiated the criminal complaint against Montano. Dominiak observed Camacho's detainment, and Soria, the Asset Protection Supervisor employed by Home Depot at Store #1986 to oversee security personnel, was present at the store on the days that Gimenez, Camacho, and Montano were detained. Further, during their detention, Camacho, Gimenez, and Gomez were all forced to sign a paper in English, which they did not understand, that appeared to relate to the charges against them. All criminal trespass charges were later dismissed. The criminal proceedings for Gomez and Gimenez were terminated in a disposition of *nolle prosequi* and the criminal proceedings for Camacho and Montano were stricken with leave to reinstate (SOL'd).

The individual plaintiffs' allegations occur against a backdrop of prior similar allegations against CPD officers, including at Store #1986. The City has already paid out more than $10

million in settlement for lawsuits based on off-duty officer conduct. It has faced numerous complaints of excessive force and unnecessary displays of a weapon by CPD officers engaged in secondary employment. Despite these facts, the City lacks specific policies for secondary employment of its officers. For example, the City has no policy that requires officers to report and get approval for police-related secondary employment. The City also does not register or track excessive force complaints that result from secondary employment, and it does not monitor where or when its officers work secondary employment.

Plaintiffs seek monetary damages as well as declaratory and injunctive relief. In response, the City moves to dismiss the *Monell*[4] claim (Count IX) and the prayer for injunctive relief. Home Depot defendants separately ask the court to dismiss seven counts with prejudice (Counts VI, VII, VIII, XII, XIII, XIV, and XVII) and to partially dismiss three others (Counts X, XI, and XV). Defendants argue that the specified counts must be dismissed for failure to state a claim and, in some instances, for lack of standing. *See* Fed. R. Civ. P. 12(b)(1); Fed. R. Civ. P. 12(b)(6).

## **LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests whether the complaint states a claim on which relief may be granted." *Richards* v. *Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012); Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences in a plaintiff's favor. *See Park* v. *Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 830 (7th Cir. 2012). Nevertheless, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Cincinnati Life Ins. Co.* v. *Beyrer*, 722 F.3d 939, 946 (7th Cir.

---

[4] *See generally Monell v. Dep't. of Soc. Servs. of City of N.Y.,* 436 U.S. 658 (1978).

2013) (citing *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009)). To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual detail, accepted as true, to state a plausible claim for relief that rises above the speculative level. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007).

"[S]tanding consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Spokeo*, *Inc.* v. *Robins*, 578 U.S. 330, 338 (2016) (cleaned up). A facial attack on standing, as is presented here, requires the court to "consider and weigh evidence outside the pleadings to determine whether it has power to adjudicate the action." *Bazile* v. *Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020) (citation omitted).

## ANALYSIS

### I.     The City's Motion to Dismiss

The City challenges the sufficiency of the allegations supporting liability under *Monell* and, if the claim survives, contends that plaintiffs lack standing to seek injunctive relief.

#### a.   Count IX – Unlawful Policy and Practice in Violation of 42 U.S.C. § 1983

The City may be subject to *Monell* liability where an unconstitutional act was caused by (1) an express municipal policy, (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice, or (3) an official with final policymaking authority. *Waters* v. *City of Chi.*, 580 F.3d 575, 581 (7th Cir. 2009) (citation omitted). The decision not to implement a policy may also form the basis for *Monell* liability. *See Glisson* v. *Ind. Dep't of*

6

*Corr.*, 849 F.3d 372, 378–79 (7th Cir. 2017). For instance, "where rules or regulations are required to remedy a potentially dangerous practice, the [City's] failure to make a policy is also actionable." *Thomas* v. *Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010).

Plaintiffs' *Monell* claim is based on the City's failure to implement effective policies to regulate CPD officers' secondary employment. Specifically, they allege that the City fails to train CPD officers for secondary employment or otherwise monitor them. These failures have resulted in widespread practices of allowing off-duty officers engaged in secondary employment to use excessive and deadly force and to unlawfully detain, arrest, imprison, and prosecute individuals such as the individual plaintiffs. In support, plaintiffs allege five separate incidents involving individual plaintiffs who were arrested, detained, and battered by armed off-duty CPD officers working secondary employment for Home Depot. The allegations regarding individual plaintiffs are broad but together add significant fact detail to plaintiffs' *Monell* claim—a claim that can survive a motion to dismiss "even with conclusory allegations that a policy or practice existed, so long as facts are pled that put the defendants on proper notice of the alleged wrongdoing." *Riley* v. *Cnty. of Cook*, 682 F.Supp.2d 856, 861 (N.D. Ill. 2010) (citing *McCormick* v. *City of Chi.*, 230 F.3d 319, 325 (7th Cir. 2000)).

Nevertheless, the City argues that the alleged practices are insufficiently widespread to support their *Monell* claim since "specific allegations to a widespread practice are limited to the experience of Individual Plaintiffs outside one Home Depot store in 2023 and 2024." (Dkt. 79 at 9.) This argument not only understates the content of the plaintiffs' amended complaint but also applies the wrong standard for pleading a *Monell* claim. A single plaintiff—and here there are five—may plead a *Monell* claim based solely on his own experience, rather than being required to plead examples of other individuals' experiences. *See White* v. *City of Chi.*, 829 F.3d 837, 844

7

(7th Cir. 2016). Furthermore, the Seventh Circuit has allowed failure-to-train *Monell* claims to proceed where fewer than five incidents have been alleged. *See e.g.*, *Flores* v. *City of S. Bend*, 997 F.3d 725, 733–34 (7th Cir. 2021). As such, the five separate incidents are sufficient under governing law to allege a widespread practice.

But here, plaintiffs' allegations are not limited to merely the individual plaintiffs' injuries. Plaintiffs also allege that the City has entered into a significant number of settlements regarding off-duty CPD officers' use of excessive force; has received other complaints related to CPD officers' use of excessive force in secondary employment; and has had various defects in its secondary employment policies called out by both federal and municipal policymakers. These additional details further support the allegations of a widespread custom, policy, or practice surrounding CPD officers' secondary employment. *See Scott* v. *Vill. of Riverdale, Ill.*, No. 1:22-CV-02936, 2023 WL 5509354, at *2 (N.D. Ill. Aug. 25, 2023) (declining to dismiss *Monell* claim where plaintiff had alleged additional incidents to support his widespread practice claim). These broader allegations, combined with the individual plaintiffs' experiences, are more than sufficient to allege widespread practice.

Moreover, the same allegations support a plausible inference that the City has been deliberately indifferent to the conduct of off-duty officers. To demonstrate *Monell* liability for a harmful custom or practice, a plaintiff must allege that a municipality was aware of the risk created by the custom or practice and failed to take appropriate steps to protect him. *Thomas*, 604 F.3d 293, 303 (7th Cir. 2010); *see also Flores*, 997 F.3d at 733 ("A municipality can be held liable under a theory of failure to train if it has actual knowledge of a pattern of criminally reckless conduct and there is an obvious need to provide training to avert harm."). By alleging similar prior incidents of excessive force, including at Store #1986, plaintiffs have alleged

8

awareness on the part of the City regarding the risks of secondary employment. This goes directly to the question of deliberate indifference.[5]

The remaining question is whether plaintiffs have adequately alleged causation since *Monell* liability requires the policy or custom to have been the "moving force" behind the constitutional injury. *See, e.g.*, *Baskins* v. *Gilmore*, No 17 C 07566, 2018 WL 4699847, at *4 (N.D. Ill. Sept. 30, 2018) (citation omitted). The City argues that the amended complaint fails to allege causation since it merely "alleges that there are issues between private citizens" and thus fails to allege that plaintiffs "have suffered constitutional injuries." (Dkt. 79 at 12.) This argument is undeveloped but appears to be based on the presumption that off-duty CPD officers could not have committed a constitutional injury at the time they were engaged in secondary employment. This is not so since an off-duty officer may, under certain circumstances, be found to be acting under color of state law. *See Pickrel* v. *City of Springfield, Ill.*, 45 F.3d 1115, 1118 (7th Cir. 1995) (collecting cases) ("It is inadequate to simply conclude that any off-duty officer also employed by a private entity could not have been acting under color of state law."). Moreover, even if the off-duty officers were not acting under color of law, *Monell* liability may still accrue. *See Gibson* v. *City of Chi.*, 910 F.2d 1510, 1519 (7th Cir. 1990) ("[O]ur conclusion that [an officer] did not act under color of state law does not permit summary judgment on [a] municipal liability claim."). In sum, plaintiffs have adequately alleged that the City's practices put off-duty officers in a position to unconstitutionally injure the individual plaintiffs. These are sufficient facts to plead causation. The court declines to dismiss Count IX.

---

[5] Here and elsewhere, the City argues against the sufficiency of plaintiffs' allegations by countering with its own, including allegations regarding an ongoing consent decree, the collective bargaining agreement applicable to CPD officers, and findings from the Civilian Office of Police Accountability. The court excludes these allegations because they were not referenced by plaintiffs in their amended complaint. In ruling on a motion to dismiss, the court is generally required to consider only the allegations made in the complaint. *Venture Assocs. Corp.* v. *Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

### b.  Plaintiffs' Standing to Seek Injunctive Relief

The City next argues that, even if plaintiffs may bring their *Monell* claim, they lack standing to seek injunctive relief because they have not alleged that there is a real and immediate threat of future injury. To be sure, "an injunction is a forward-looking remedy," and thus to have standing to seek injunctive relief, a plaintiff must allege that "the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Swanigan* v. *City of Chi.*, 881 F.3d 577, 583 (7th Cir. 2018) (citation and quotation omitted).

Plaintiffs have not sufficiently alleged an impending threatened injury or substantial risk of future harm. The facts here are comparable to those presented in *City of Los Angeles* v. *Lyons*, where a plaintiff who had been injured after being subjected to an unnecessary chokehold sought to enjoin the police department from using the same restraint in the future. 461 U.S. 95, 97–99 (1983). Lyons alleged that the city's police officers were authorized and encouraged to use, and routinely did use, chokeholds where there was no threat of deadly force against them; that many others had been injured by the application of such chokeholds; that he and others similarly situated were threatened bodily injury and loss of life in the future; and that he "'justifiably fear[ed] that any contact he has with Los Angeles police officers may result in his being choked and strangled to death without provocation, justification or other legal excuse.'" *Id.* at 98. The Court held that, where Lyons could not establish that he faced a real and immediate threat of being illegally choked again—or that in "every … encounter between the police and a citizen" the police would unconstitutionally "inflict injury without provocation or legal excuse"—and where the police department's official policy[6] instructed officers to use chokeholds only "to gain

---

[6] The dissent insisted that the allegations of the chokehold practice (albeit contrary to written policy) was official policy, and subject to both damages and injunctive relief. *See Lyons*, 461 U.S. at 121–138 n.12 (citing *Monell,* 436 U.S. at 694) ("The District Court's finding is not refuted by the statement of the City's policy which is

control of a suspect who is violently resisting the officer or trying to escape," the district court lacked power to rule because of "the speculative nature of [the plaintiff's] claim that he will again experience injury as the result of that practice even if continued." *Id.* at 108–10.[7] *Lyons* is controlling law.

The amended complaint contains but one allegation that an individual plaintiff anticipates a substantial risk of future harm from the defendants: "Mr. Arias continues to suffer emotional distress and fear of continued abuse from the Defendants and other officers if he were to seek work near Home Depot Store #1986." (Dkt. 57 ¶ 84.) Arias's fear is not a real and immediate threat of being beaten and prosecuted again. Neither do plaintiffs allege that off-duty officers performing security service at Home Depot *always* "inflict injury without provocation or legal excuse," nor is the lack of official CPD policy sufficient under *Lyons* to amount to an official policy. *Lyons*, 461 U.S. at 108. As pleaded, the individual plaintiffs lack standing to obtain injunctive relief.

As for Latino Union, it alleges various ongoing injuries it will endure if the defendants are not enjoined. These injuries include "postpon[ing], abandon[ing], or limit[ing]" its outreach efforts to other day laborer networks, reducing workshops provided to support household workers, and curtailing its involvement in other policymaking efforts in order to shift staffing and time towards constitutional rights violations at Store #1986. (Dkt. 57 ¶¶ 222–26.) The City, in its reply, has not addressed the argument that ongoing injuries to Latino Union amount to a

---

set forth in a LAPD manual, *ante*, at 1669, for municipal liability under § 1983 may be predicated on proof of an official custom whether or not that custom is embodied in a formal policy.").

[7] The dissent also objected to "fragmenting a single claim into multiple claims for particular types of relief and requiring a separate showing of standing for each form of relief," calling it a "depart[ure] from this Court's traditional conception of standing and of the remedial powers of the federal courts." *Id.* at 122–23. For a thorough critique of *Lyons*, see Peter C. Douglas, *City of Los Angeles v. Lyons*: How Supreme Court Jurisprudence of the Past Puts a Chokehold on Constitutional Rights in the Present, 17 Nw. J.L. & Soc. Pol'y 81, 125 (2021).

substantial risk of future harm, giving it standing to request injunctive relief. Nonetheless, Latino Union faces the same *Lyons* barrier as the individual plaintiffs. As alleged, the organization has not pleaded the immediate threat of future harm because any harm to it arises from the injuries to migrant workers at Store #1986, including the individual plaintiffs, and it has not adequately alleged a substantial risk that these migrant workers will be subject to future constitutional injuries.

For these reasons, the claims for injunctive relief are dismissed.

## II.     Home Depot Defendants' Motion to Dismiss

Home Depot defendants seek dismissal of plaintiffs' conspiracy claims and the Illinois common law claims of malicious prosecution, false arrest, gross negligence, and vicarious liability. They also seek dismissal of plaintiffs' equal protection claim brought under 42 U.S.C. § 1981. Additionally, arguing that certain claims have been brought against, or by, the incorrect parties, Home Depot defendants seek partial dismissal of each of the intentional torts to the extent these claims are brought by Latino Union and to the extent they are brought against Home Depot defendants by individual plaintiffs not alleged to have interacted with them. Home Depot defendants also seek dismissal of all claims as brought against Soria.

### a.     Counts VI, VII, and XIV – Conspiracy in Violation of Sections 1983, 1985, and 1986 and in Violation of Illinois Law

Home Depot defendants argue that plaintiffs' conspiracy claims must be dismissed because (1) they have insufficiently alleged an agreement for any conspiracy claim; (2) for the section 1985 claim, they have failed to allege joint action as necessary for holding private actors liable under section 1983; and (3) for the section 1986 claim, they have failed to plausibly allege

that the relevant defendants knew, and had the power to prevent, a conspiratorial wrong that was about to be committed.[8]

### i. Pleading Conspiracy Generally

To state a claim for conspiracy, plaintiffs are required to "allege the parties, the general purpose, and the approximate date[s] of the conspiracy." *Loubser* v. *Thacker*, 440 F.3d 439, 443 (7th Cir. 2006) (citing *Walker* v. *Thompson*, 288 F.3d 1005, 1007–08 (7th Cir. 2002)), *overruled on other grounds by Hadzi-Tanovic* v. *Johnson*, 62 F.4th 394 (7th Cir. 2023). In effect, to avoid dismissal of a conspiracy claim, plaintiffs must state the who, what, why, and when of the alleged conspiracy.

Plaintiffs have done so. They allege that on- and off-duty members of the CPD, including Martinez and Alvarez, conspired with Home Depot employees at Store #1986, including Rojas, Reid, Dominiak, and Soria, to detain, assault, and charge individual plaintiffs because of their perceived race and national origin. Plaintiffs further state that this conspiracy took place between the approximate dates of October 2023 and May 2024. Thus, plaintiffs have supplied the parties, the purpose, and the dates of the conspiracy—allegations that state a conspiracy.

Yet, Home Depot defendants argue that each of the conspiracy counts fails because plaintiffs have not sufficiently pleaded the existence of an underlying agreement. Home Depot defendants are correct that an express or implied agreement among defendants to commit the tortious act, or the deprivation of constitutional rights, must be pleaded in civil conspiracy claims. *See Milchtein* v. *Milwaukee Cnty.*, 42 F.4th 814, 827 (7th Cir. 2022) (applied to Section 1985 claims); *Scherer* v. *Balkema*, 840 F.2d 437, 442–43 (7th Cir. 1988) (applied to Section

---

[8] Home Depot defendants do not dispute that plaintiffs have alleged the deprivation of a right, privilege, or immunity for purposes of 42 U.S.C. § 1983. Home Depot defendants also do not dispute, for purposes of 42 U.S.C. §§ 1985, 1986, that plaintiffs have alleged invidious racial animus.

1983 claims); *McClure* v. *Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999) (applied to Illinois civil conspiracy claims); *see also Williams* v. *St. Joseph Hosp.*, 629 F.2d 448, 452 (7th Cir. 1980) (discussing that Section 1986 "merely gives a remedy for misprision of a violation of 42 U.S.C. § 1985"). But Home Depot defendants have set far too high a bar for pleading such an agreement.

To plausibly allege an agreement in a conspiracy, "specific facts detailing the conspiracy's formation" are not required. *Quinones* v. *Szorc*, 771 F.2d 289, 291 (7th Cir. 1985). Rather, plaintiffs may allege conspiracy through "circumstantial allegations of an agreement, which are claimed facts that collectively give rise to a plausible inference that an agreement existed." *Alarm Detection Sys., Inc.* v. *Vill. of Schaumburg*, 930 F.3d 812, 827 (7th Cir. 2019).

Plaintiffs have mustered significant circumstantial evidence of such an agreement. They allege that, while looking for day labor at an area where Venezuelan migrants seek day labor, all individual plaintiffs were handcuffed without explanation by security for Home Depot, which included off-duty CPD officers working secondary employment. Plaintiffs further allege that these security personnel pulled, dragged or pushed the individual plaintiffs into Store #1986 before bringing them to a private room within the store where they were detained. Each individual plaintiff was battered by the security personnel who took them there. These batteries were, at times, observed by other Home Depot personnel, and supervisors of security personnel were present at Store #1986 on several of the days these events took place. At least three of the individual plaintiffs were subjected to derogatory comments regarding Venezuelans during these incidents, and four were charged with criminal trespass. Criminal complaint forms against Gimenez, Camacho, and Montano were completed by Martinez, Rojas, and Reid. Plaintiffs

allege that each of these actions was undertaken pursuant to a conspiracy between Home Depot, the City, and the individual defendants to target migrants perceived to be Venezuelan.

As in *Geinosky* v. *City of Chi.*, 675 F.3d 743, 749 (7th Cir. 2012), "the complaint makes only rather conclusory direct allegations of conspiracy, [but] the complaint also alleges a pattern of harassment by several [individuals] over a period of months." This alleged pattern of abuse is sufficient for pleading conspiracy. Because Home Depot defendants do not otherwise dispute that plaintiffs have plausibly alleged the Illinois common law claim of conspiracy (Count XIV), the court declines to dismiss this count.

### ii. Joint Action Theory

Home Depot defendants argue, in the alternative, that even if a conspiracy exists, the conspiracy claim under 42 U.S.C. § 1983 fails as brought against Home Depot defendants because plaintiffs have not shown joint action between private and state actors. But as previously discussed, plaintiffs have adequately alleged civil conspiracy through pleading sufficient circumstantial evidence. These same allegations adequately show joint state and private actor participation in the conspiracy.

For a section 1983 conspiracy claim against private actors, such as Rojas, Reid, Dominiak, and Soria, a plaintiff must allege that the private party was acting "under color of state law." *Scott* v. *Univ. of Chi. Med. Ctr.*, 107 F.4th 752, 757 (7th Cir. 2024) (internal citations and quotations omitted). For this, it is sufficient to allege that the private party jointly "conspire[d] with the government to infringe on a plaintiff's rights." *Scott*, 107 F.4th at 757 (7th Cir. 2024) (citing *Adickes* v. *S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)).

As *Pickrel* illustrates, an off-duty police officer who asserts the authority of an on-duty officer may be acting under color of law. *See Pickrel* v. *City of Springfield, Ill.*, 45 F.3d 1115,

1118 (7th Cir. 1995) (collecting cases). Further, "[p]rivate parties have been found subject to liability under § 1983 when engaged in a conspiracy with one or more parties acting under the color of state law." *Moore* v. *Marketplace Rest., Inc.*, 754 F.2d 1336, 1352 (7th Cir. 1985) (citation omitted).

Plaintiffs broadly allege that armed off-duty police officers in police garb working secondary employment as security for Home Depot initiated individual plaintiffs' detentions and batteries. Plaintiffs also allege that Home Depot employees Rojas, Reid, Dominiak, and Soria joined, and at times directed, the detentions, arrests, and prosecutions of individual plaintiffs by these CPD officers. Rojas detained and battered two individual plaintiffs and further "filled out the criminal complaint form [for Gimenez] together [with Martinez] before handing it to the on-duty CPD officers." (Dkt. 57 ¶ 154.) Reid "was present for and participated in the detention and arrest of Mr. Montano, initiating a criminal complaint against him." (*Id.* ¶ 200.) Dominiak, an Asset Protection Supervisor for Home Depot, was in the room with Camacho as he was detained and beaten. Soria, another Asset Protection Supervisor with supervisory authority over security personnel, was "present at Home Depot Store #1986 on the days of Plaintiffs Gimenez, Camacho, and Montano's detention at the store and helped facilitate their detention and physical abuse." (*Id.* ¶ 45.)

Taken together, plaintiffs have alleged sufficient circumstantial evidence of joint efforts between private and state actors to effectuate the alleged conspiracy. This is sufficient at this pleading stage. Thus, the court declines to dismiss Count VII.

### iii. Section 1986 Liability

Alternatively, Home Depot defendants seek dismissal of plaintiffs' Section 1986 claim on the basis that plaintiffs have failed to allege that Rojas, Reid, Dominiak, and Soria knew, and had the ability to prevent, a conspiratorial wrong that was about to be committed.[9]

Section 1986 expands liability for wrongs done in violation of Section 1985 to every person with knowledge of a conspiracy who "with reasonable diligence could have prevented" its commission. 42 U.S.C. § 1986. To state a claim under § 1986, Plaintiff must show that [a defendant] had "(1) knowledge that any of the conspiratorial wrongs are about to be committed, (2) power to prevent or to aid in preventing the commission of those wrongs, (3) neglect to do so, where (4) the wrongful acts were committed, and (5) the wrongful acts could have been prevented by reasonable diligence." *Tillman* v. *Burge*, 813 F.Supp.2d 946, 987 (N.D. Ill., 2011) (citing *Bell* v. *City of Milwaukee*, 746 F.2d 1205, 1233 (7th Cir. 1984), *overruled on other grounds by Russ* v. *Watts*, 414 F.3d 783 (7th Cir. 2005)).

Plaintiffs allege facts supporting the elements of their claim. They allege that each of Rojas, Reid, Dominiak, and Soria were co-conspirators who provided support to the conspiracy. These defendants were present during the officers' misconduct, some participated in it, and it is plausible that, had they acted differently, for example, by reporting to their superiors, they could have prevented commission of the alleged wrongs. And, after all, Dominiak and Soria supervised the same personnel that are alleged to have engaged in the conduct at issue. This is again sufficient at the pleading stage. As such, the court declines to dismiss Count VI.

---

[9] Regarding plaintiffs' Section 1985 claim (the remainder of Count VI), Home Depot defendants merely dispute that a conspiracy existed. But as previously explained, plaintiffs have plausibly alleged the existence of a conspiracy. Thus, in reviewing Count VI, the court limits its inquiry to plaintiffs' Section 1986 claim.

### b.    Count XII – False Arrest

To allege false arrest, a plaintiff must show (1) an arrest or restraint against his will; (2) that was caused or procured by a defendant; (3) and made without probable cause. *See Gaddis* v. *DeMattei*, 30 F.4th 625, 633 (7th Cir. 2022). When brought against a private actor, such as the Home Depot defendants, a plaintiff must also allege that the private actor "commanded or mounted a campaign against the police in order to procure the plaintiff's arrest." *Id.* (citation omitted). Defendants argue that plaintiffs' claim for false arrest fails on two bases: (1) plaintiffs have not adequately alleged an absence of probable cause; and (2) plaintiffs have not plausibly alleged that Rojas, Reid, or Dominiak commanded or pressured police to effect the arrests. In both cases, plaintiffs' allegations indicate otherwise.

Probable cause to arrest exists where "the facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or *one of reasonable caution*, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Neita* v. *City of Chi.*, 830 F.3d 494, 497 (7th Cir. 2016) (citations and quotations omitted) (emphasis added). Pertinent to this analysis, plaintiffs allege that Camacho and Gomez were detained by defendant officers despite attempting to comply with their directions to leave the parking lot at Home Depot. Plaintiffs also allege that Gimenez was given no direction to leave prior to being handcuffed, and Montano was not on Home Depot property at the time he was handcuffed. The individual plaintiffs were entitled to a reasonable opportunity to leave the premises—and of course, had to be on the premises—before criminal trespass could accrue. *See People* v. *Mims*, 288 N.E.2d 891, 893 (Ill. 1972); *see also Neita*, 830 F.3d at 497 (the reasonableness of arrest "depends on the elements of the underlying criminal offense"). In this

scenario,[10] it would be unreasonable to infer that criminal trespass had occurred; thus, plaintiffs have adequately pleaded that defendants lacked probable cause to arrest the individual plaintiffs for criminal trespass.

Second, the court finds that plaintiffs have plausibly pleaded that Rojas, Reid, or Dominiak commanded or pressured police to effect the arrests. Plaintiffs allege that Rojas initiated Camacho's arrest jointly with Pater; initiated the criminal complaint against Camacho; directed the arrest of Gimenez; and filled out the criminal complaint form for Gimenez before handing it to the on-duty CPD officers. Dominiak watched over, as an Asset Protection Supervisor, Camacho's detention and formal arrest. Reid participated in the arrest of Montano jointly with Gaytan, Pater, and two other officer defendants; and initiated the criminal complaint against Montano. As such, plaintiffs allege that Home Depot defendants procured the arrests of, and initiated the complaints against, the individual plaintiffs. *See Schroeder* v. *Lufthansa German Airlines*, 875 F.2d 613, 618 (7th Cir. 1989) (citation omitted) (stating private individuals may be liable for false arrest if they caused or procured the plaintiff's arrest). This is sufficient at this pleading stage, even setting aside whether the on-duty CPD officers relied solely on the information provided by Home Depot defendants. *See Dutton* v. *Roo-Mac, Inc.*, 426 N.E.2d 604, 607 (Ill. App. Ct. 2d Dist. 1981) (citation omitted) (private parties may also be liable for false arrest "[w]here the arresting officer relies solely on the information which the defendant's employee gave him in making the arrest"). Accordingly, the court declines to dismiss Count XII.

---

[10] The court declines to consider, at this juncture, the footnote arguments presented by Home Depot defendants in support of their motion to dismiss. It is well-established that arguments raised by only passing reference in a footnote are deemed waived. *See, e.g.*, *Evergreen Square of Cudahy* v. *Wis. Hous. & Econ. Dev. Auth.*, 848 F.3d 822, 829 (7th Cir. 2017) (citation omitted). The court also declines to take judicial notice of the related exhibits attached to Home Depot defendants' reply brief. The court may, but is not required, to take judicial notice of these documents since "[j]udicial notice is a powerful tool that must be used with caution." *Tobey* v. *Chibucos*, 890 F.3d 634, 648 (7th Cir. 2018) (citation omitted).

### c. Count XIII – Malicious Prosecution

To state a claim for malicious prosecution, Illinois law requires a plaintiff to show "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Esco* v. *City of Chi.*, 107 F.4th 673, 683 (7th Cir. 2024) (citations and quotations omitted). Malicious prosecution actions are disfavored, and each element must be met. *See Beaman* v. *Freesmeyer*, 131 N.E.3d 488, 494–95 (Ill. 2019). Home Depot defendants argue that plaintiffs fail to state a claim for malicious prosecution for three reasons: (1) plaintiffs have inadequately alleged that Home Depot defendants initiated the prosecution of individual plaintiffs; (2) plaintiffs have not alleged that their prosecutions were favorably terminated; and (3) plaintiffs have failed to allege the absence of probable cause. The court addresses only Home Depot defendants' first two challenges to plaintiffs' malicious prosecution claim since, as previously discussed, plaintiffs have sufficiently alleged the absence of probable cause for their arrests and prosecutions.

As an initial matter, Home Depot defendants assert that plaintiffs' malicious prosecution claim must be dismissed because plaintiffs have failed to plead facts suggesting that Home Depot defendants "lied to police or directed, requested, or pressured police into arresting" individual plaintiffs. (Dkt. 78-1 at 8.) But the commencement or continuance element of a malicious prosecution claim can be met where a "defendant improperly exerted pressure on the prosecutor, knowingly provided misinformation to him or her, concealed exculpatory evidence, or otherwise engaged in wrongful or bad-faith conduct instrumental in the initiation of the prosecution." *Beaman*, 131 N.E.3d at 499 (citation omitted). Further, liability for malicious prosecution

extends not only to instances where a "defendant signed a complaint against the plaintiff," but also to "all persons who played a significant role in causing the prosecution of the plaintiff." *Sanders* v. *City of Chi. Heights*, No. 13 C 0221, 2014 WL 5801181, at *5 (N.D. Ill. Nov. 7, 2014) (quoting *Rodgers* v. *Peoples Gas, Light & Coke Co.,* 733 N.E.2d 835, 842 (Ill. App. Ct. 1st Dist. 2000)). Here, plaintiffs allege that the criminal complaints brought against individual plaintiffs were initiated by Rojas and Reid after they detained the individual plaintiffs. Plaintiffs also allege that Dominiak and Soria supervised security personnel, such as Rojas and Reid, at Store #1986, including on the relevant dates. Discovery will be needed to determine the extent of these individual defendants' involvement in the individual plaintiffs' prosecutions, but this is sufficient fact detail at this pleading stage to allege a significant role in initiating those prosecutions.

Home Depot defendants also argue that plaintiffs have failed to allege facts indicating that the criminal proceedings were terminated in favor of the individual plaintiffs. In response, plaintiffs have added allegations that the criminal proceedings for Gomez and Gimenez were terminated in a disposition of *nolle prosequi* and the criminal proceedings for Camacho and Montano were stricken with leave to reinstate (SOL'd).[11]  The court will consider these new allegations, as they are not disputed, and plaintiffs are free to "elaborate on [their] factual allegations so long as the new elaborations are consistent with the pleadings." *Geinosky* v. *City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).[12]

---

[11]  Regarding Camacho and Montano, plaintiffs also allege that they demanded a trial and have met the 160-day waiting period for termination of their cases. As such, there is no question that these cases had been terminated as of the filing of this action. *See Ferguson*, 820 N.E.2d at 461.

[12]  In contrast, as explained in n.11, the court declines to consider, at this juncture, Home Depot defendants' undeveloped footnote arguments in their memorandum in support of their motion to dismiss.

Illinois applies the Restatement of Torts to questions of favorable termination:

> Civil proceedings may be terminated in favor of the person against whom they are brought * * * by (1) the favorable adjudication of the claim by a competent tribunal, or (2) the withdrawal of the proceedings by the person bringing them, or (3) the dismissal of the proceedings because of his failure to prosecute them. A favorable adjudication may be by a judgment rendered by a court after trial, or upon demurrer or its equivalent. In either case the adjudication is a sufficient termination of the proceedings, unless an appeal is taken. * * * *Cult Awareness Network* v. *Church of Scientology Int'l.*, 685 N.E.2d 1347, 1352 (1997) (alteration in original).

Dismissal of a criminal proceeding alone is insufficient for this element. Rather, for a proceeding to be favorably terminated, it must be terminated "for reasons indicative of the plaintiff's innocence." *Ferguson* v. *City of Chi.*, 820 N.E.2d 455, 460 (Ill. 2004) (citation omitted). Plaintiffs have the burden of showing that an action was favorably terminated. *Swick* v. *Liautaud*, 662 N.E.2d 1238, 1243 (Ill. 1996); s*ee Allen* v. *Smith*, No. 99 C 3521, 1999 WL 1144944, at *1 (N.D. Ill. Oct. 6, 1999) ("[I]t is plaintiff's burden to present evidence that the SOL was entered for reasons consistent with her innocence."). Specifically, plaintiffs must show that "[t]he circumstances surrounding the cessation of the criminal proceedings … compel an inference that reasonable grounds to pursue the criminal prosecution were lacking." *See Washington* v. *Summerville*, 127 F.3d 552, 557 (7th Cir. 1997) (citation omitted).

The principles are not in dispute. The question here is what facts must be pleaded in order to support a reasonable inference that a termination was favorable to the plaintiff. *See*, *e.g.*, *Ashcroft v. Iqbal,* 556 U.S. 662, 678 ("A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *see also Spearman* v. *Elizondo*, 230 F. Supp. 3d 888, 892 (N.D. Ill. 2016) (citation omitted) ("[C]omplaints [must] be read as a whole."). In a nutshell, according to plaintiffs' detailed allegations, individual plaintiffs were arrested because they appeared to be Venezuelan and were standing near Store #1986 to pursue day labor work. They were then taken

22

into custody and prosecuted to deter them and other Venezuelan day laborers from waiting for work near the store. In the end, their cases were terminated in a disposition of *nolle prosequi* or SOL, which, while not conclusive, is circumstantial evidence that probable cause was lacking. Certainly, plaintiffs must eventually muster additional facts that prove that the proceedings were terminated in their favor under circumstances indicative of their innocence, but this complaint is not one "armed with nothing more than conclusions." *Iqbal,* 556 U.S. at 679. As such, the court declines to dismiss Count XIII.

### d. Count VIII – Denial of Equal Protection in Violation of 42 U.S.C. § 1981

Section 1981 guarantees all persons "the same right" as "white citizens" to make and enforce contracts. 42 U.S.C. § 1981. The protections under Section 1981 broadly encompass "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." *Id.* Covered acts of discrimination are more limited, however, since discrimination on the basis of race or ethnicity must be the 'but for' cause of the contractual interference for liability under Section 1981 to accrue. *See Comcast Corp.* v. *Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 333 (2020); *see also Ortiz* v. *Werner Enters., Inc.*, 834 F.3d 760, 764 (7th Cir. 2016) (applied to ethnicity).

Even if the court assumes (without deciding) that plaintiffs have adequately alleged denial of equal protection based on their ethnicity, they cannot succeed on their Section 1981 claim. Section 1981 does not apply to every instance of discrimination on the basis of race or ethnicity. To violate Section 1981, a contract interest must be implicated by the acts of invidious discrimination. *See Morris* v. *Off. Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996) (citation omitted) (stating that the discrimination must concern the making and enforcing of a contract). On this

point, Home Depot defendants argue that plaintiffs have failed to "identif[y] impairment of any actual or potential contract." (Dkt. 78-1 at 11.)

The Seventh Circuit has stated "[a] claim for interference with the right to make and enforce a contract must allege the actual loss of a contract interest, not merely the possible loss of future contract opportunities." *Morris*, 89 F.3d at 414–15 (citation omitted). As a result, mere reliance on "prospective contractual relations" is insufficient to state a claim under Section 1981. *Id.* at 414. Plaintiffs allege that, immediately before their arrests and detentions, the individual plaintiffs were seeking day labor work at or around Store #1986. The individual plaintiffs were then prevented from seeking further day labor during their detentions, and in some cases, thereafter out of fear. No specific contractual relationship has been alleged; with one limited exception,[13] the individual plaintiffs have merely stated generally that they were hoping for day labor work at or around Store #1986. This is the loss of a future contract opportunity, which is not actionable under section 1981. Count XVI must be dismissed.

### e. Count XVII – Respondeat Superior Liability Pursuant to Illinois State Law

Home Depot defendants seek dismissal of Count XVII on the basis that plaintiffs have failed to plausibly state a claim for respondeat superior liability for unlawful conduct of the CPD defendants. In support, they argue that plaintiffs have (1) failed to allege an employer-employee relationship between defendant officers and Home Depot; and (2) failed to allege that the conduct of the defendant officers fell within the scope of any employment with Home Depot. Plaintiffs, on the other hand, contend that they have alleged not only an employer-employee

---

[13] In one instance, regarding Montano, plaintiffs allege that he arrived at Store #1986 "with the intention of meeting a person with whom he had previously discussed a job" whereupon he "waited for the person … on a public sidewalk near the entrance on Western Boulevard." (Dkt. 57 ¶¶ 185–86.)

relationship between defendant officers and Home Depot but also that defendant officers were acting at the direction, and for the benefit, of Home Depot.

Under Illinois law, an employer may be subject to respondeat superior liability only for the "'negligent, wilful [*sic*], malicious or even criminal acts of its employees when such acts are committed in the scope of employment and in furtherance of the business of the employer.'" *Stern* v. *Ritz Carlton Chi.*, 702 N.E.2d 194, 196 (Ill. App. Ct. 1st Dist. 1998) (quoting *Deloney* v. *Board of Educ.*, 666 N.E.2d 792, 798 (Ill. App. Ct. 1st Dist. 1996)). Employee conduct falls within the scope of employment where it (1) is of the kind the employee is employed to perform; (2) occurs substantially within the authorized time and space limits; and (3) is actuated, at least in part, by a purpose to serve the employer. *Doe* v. *Clavijo*, 72 F. Supp. 3d 910 (N.D. Ill. 2014) (citing *Bagent* v. *Blessing Care Corp.*, 862 N.E.2d 985, 991 (Ill. 2007)).

Plaintiffs allege that off-duty CPD officers moonlighting as security for Home Depot detained, assaulted, and battered the individual plaintiffs as they were seeking day labor work. Plaintiffs allege that these events took place during work hours and at the site of employment. They allege that the detentions, assaults, and batteries were performed pursuant to a Home Depot plan to target Venezuelan day laborers following their increase at or around Store #1986 in Fall 2023; and plaintiffs also allege that defendant officers and other Home Depot employees conspired to effectuate this plan.

These allegations adequately support a claim of respondeat superior liability against Home Depot. Plaintiffs have shown a pattern of detentions, assaults, and batteries of the individual plaintiffs by CPD defendants working secondary employment for Home Depot. Moreover, by alleging that defendant officers' actions were performed pursuant to a plan by Home Depot to target Venezuelan day laborers at Store #1986, plaintiffs have adequately alleged

both that this was the kind of work for which these officers were hired and that the work was performed for the benefit of Home Depot. Taken together, plaintiffs have introduced sufficient factual detail at this pleading stage for their respondeat superior claim. The court declines to dismiss Count XVII.

### f. Count XV – Gross Negligence in Violation of Illinois Law

The court similarly finds that plaintiffs have adequately pleaded Count XV, a claim for gross negligence. The court interprets this claim to be a standard negligence claim, which required plaintiffs to allege that defendants had a duty of care to plaintiffs; defendants breached that duty; and the breach was a proximate cause of plaintiffs' injuries. *See Burke* v. *Nationstar Mortg., LLC*, No. 21-CV-1549, 2022 WL 888811, at *12 (N.D. Ill. Mar. 25, 2022) (collecting cases) (construing gross negligence claim as an ordinary negligence claim). Home Depot defendants' sole argument for dismissing Count XV is that plaintiffs have failed to allege an employment relationship between the CPD defendants and Home Depot. But as discussed previously, plaintiffs have adequately alleged such an employment relationship. Thus, the court declines to dismiss Count XV.

### g. Counts X, XI, XII and XIII – Claims for Intentional Torts as Against Individual Home Depot Employees

Home Depot defendants next move to have claims for intentional torts dismissed where no interaction has been alleged between an individual Home Depot defendant and a particular individual plaintiff. Plaintiffs' use of a group pleading for the intentional torts in the amended complaint is acceptable since this "is not a case where the allegations of the complaint leave the defendants in the dark about what they are alleged to have done." *Robles* v. *City of Chi.*, 354 F. Supp. 3d 873, 875 (N.D. Ill. 2019).

For the events involving Gomez and Camacho,[14] the amended complaint identifies the individuals who were involved in the respective intentional torts. The court agrees that it is proper to dismiss intentional torts where they are brought against Home Depot defendants that plainly had no interaction with a particular individual plaintiff based on the allegations. *See, e.g.*, *Johnson* v. *Vill. of Bellwood*, No. 09C5511, 2010 WL 2653335, at *4 (N.D. Ill. July 1, 2010). As such, the court dismisses these counts in accordance with the below.

Count X, an assault and battery claim, is brought by all plaintiffs against Rojas and Reid. But Rojas was not a participant in the assault and battery of Gomez; and Reid was not a participant in the assaults and batteries of Gomez and Camacho. Accordingly, the court dismisses Count X to the extent it brings a claim for assault and battery (1) against Rojas based on the events involving Gomez; and (2) against Reid based on the events involving Gomez and Camacho.

Count XI, a claim for intentional infliction of emotional distress (IIED), is also brought against Rojas and Reid by all plaintiffs. Rojas was not present during Gomez's injuries; and Reid was not present for either Gomez's or Camacho's injuries. Accordingly, the court dismisses Count XI to the extent it brings a claim for IIED (1) against Rojas based on the events involving Gomez; and (2) against Reid based on the events involving Gomez and Camacho.

Each of Count XII, a claim for false arrest, and Count XIII, a claim for malicious prosecution, is brought by all plaintiffs against Rojas, Reid, and Dominiak. Rojas had no interactions with Gomez, and Reid did not interact with either Gomez or Camacho. Dominiak, however, was not only present for at least Camacho's arrest but performed a supervisory role for

---

[14] Plaintiffs have not named all individuals who contributed to the injuries of Arias, Gimenez, and Montano, and plaintiffs may require pretrial discovery to identify them. *See Rodriguez* v. *Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). As such, throughout this section, the court only considers dismissal of intentional torts brought by Gomez and Camacho.

27

security personnel, including Rojas and Reid. It would thus be inappropriate to dismiss claims of false arrest and malicious prosecution as brought against Dominiak at the pleading stage. Accordingly, the court dismisses Count XII to the extent it brings a claim for false arrest (1) against Rojas based on the events involving Gomez; and (2) against Reid based on the events involving Gomez and Camacho. Similarly, the court dismisses Count XIII to the extent it brings a claim for malicious prosecution (1) against Rojas based on the events involving Gomez; and (2) against Reid based on the events involving Gomez and Camacho.

The court declines to dismiss the remainder of Counts X, XI, XII and XIII.

### h. Counts X, XI, and XII – Intentional Torts Brought by Latino Union

Home Depot defendants also seek dismissal of Counts X, XI, and XII to the extent these claims are brought by Latino Union. In response, plaintiffs now state that Latino Union does not seek relief for claims sounding in Illinois tort law. As such, Counts X, XI, and XII are dismissed without prejudice as to Latino Union.

### i. All Counts as Against Soria

Finally, Home Depot defendants seek dismissal of all counts as brought against Soria, arguing that plaintiffs have inadequately alleged her involvement in the scheme to target the individual plaintiffs. But setting aside plaintiffs' Section 1981 claim, which the court has dismissed, plaintiffs have limited the counts brought against Soria to the conspiracy counts and a count for gross negligence. As the court has included Home Depot defendants in the conspiracy, it will not revisit it specifically as to Soria other than to indicate it is reasonable to infer that she was aware of and allowed the abuse to occur.

As for gross negligence, Soria is an Asset Protection Manager at Store #1986 with supervisory authority over security personnel at the store. She was present at Store #1986 on the

days Gimenez, Camacho, and Montano were detained and helped facilitate their detentions and physical abuse. Although it is conceivable that Soria had no idea that her subordinates were beating and detaining Venezuelan day laborers, this would undoubtedly provide a basis for a finding of negligence on her part. *See Doe* v. *Coe*, 135 N.E.3d 1, 15 (Ill. 2019) ("[R]easonable performance of the duty to supervise will put the supervisor on notice of an employee's conduct or perhaps prevent the employee's tortious conduct all together."). Whether the conduct was grossly negligent is better left to the jury. The court declines to dismiss Soria from this lawsuit.

## **CONCLUSION AND ORDER**

For the foregoing reasons, the court grants in part and denies in part the City's motion to dismiss (dkt. 79) and grants in part and denies in part Home Depot defendants' motion to dismiss without prejudice (dkt. 78). The court dismisses plaintiffs' claim for injunctive relief. The court further dismisses Count VIII without prejudice and partially dismisses Counts X, XI, XII, and XIII without prejudice, as follows: The Court dismisses Counts X, XI, XII, and XIII as brought against Rojas by Gomez; Counts X, XI, XII, and XIII as brought against Reid by Gomez or Camacho; and Counts X, XI, and XII as brought by Latino Union. The court declines to dismiss the remainders of Counts X, XI, XII, and XIII. The court further declines to dismiss claims brought against Soria. Finally, the court declines to dismiss Counts VI, VII, IX, XIV, XV, and XVII.

Plaintiffs may file a second amended complaint. The parties have until February 5, 2026, to file a scheduling order, which shall include the deadline for plaintiffs to file their second amended complaint, if they elect to do so, and the deadline for defendants to answer or otherwise plead to the operative amended complaint. The parties shall continue discovery under the supervision of the designated magistrate judge and are encouraged to engage in settlement

discussion with the magistrate judge. A status hearing is set for April 22, 2026 at 9:30 a.m. in courtroom 2201.

Date: January 30, 2026

U.S. District Judge Joan H. Lefkow